# Richmond.

92   809
93   170

## COMMONWEALTH v. MYER.

### JANUARY 16, 1896.

1. LICENSE TAX—*Peddlers—Interstate Commerce—Discrimination in Favor of Citizens of the State—Section 32, ch. 244, Acts 1889-90, Unconstitutional and Void.*—The State of Virginia has the right to impose a tax on peddlers, where it operates uniformly upon all citizens and does not discriminate in favor of citizens of this State and against citizens of other States, or where the tax imposed is in the exercise of police powers, and not a regulation of commerce under cover of that power, although incidentally it may have that effect; but where any injurious discrimination is made in favor of the resident against the non-resident, or with respect to the sales of articles manufactured in this State over similar articles manufactured abroad, the law is repugnant to the Constitution of the United States, and therefore void. Applying these principles to section 32 of chapter 244, Public Acts 1889-'90, page 197, the said section is void, because it injuriously discriminates against the products of other States and the rights of other citizens, and is an attempt to fetter commerce among the States, and deprives the citizens of other States of the privileges and immunities possessed by the citizens of this State.

Error to a judgment of the Hustings Court of the city of Richmond, rendered April 22, 1895, upon an information filed against the defendant in error for violation of the revenue laws of the State.

*Affirmed.*

The jury found the defendant not guilty, and judgment was entered accordingly.

The opinion states the case.

*Attorney-General R. Taylor Scott*, for the Commonwealth.

*Edmund Waddill, Jr.*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

At the April term, 1895, of the Hustings Court for the city of Richmond, the attorney for the Commonwealth proceeded against John Myer, by information, setting forth that he was not a manufacturer, nor a manufacturer assessed with the tax imposed upon his capital employed, under Schedule "C" of an act to provide for the assessment of taxes on persons, * * * and on licenses to transact business, * * * and for the support of the government, and who has no regular place of business in this city, open at all times in regular business hours; but that on the 4th day of April, 1895, within the jurisdiction of the Hustings Court of the said city, he was engaged in going from house to house, and street to street, with a wagon and horse, offering for sale an article known as "Soapine," and did sell, and offer for sale, the said merchandise, in the said city, to one Mrs. James Woolridge, without first having obtained the license required by law. To this information John Myer appeared and filed a general demurrer, which was overruled; and thereupon he pleaded "not guilty," and a jury was empanelled for his trial, which resulted in his acquittal. Upon the petition of the Commonwealth, through its Attorney-General, a writ of error was awarded by this court.

The record contains several bills of exceptions, in the first of which the evidence is set out, from which it appears that every fact set out in the information was sufficiently proven.

It also appears, from the evidence of the accused, who was examined as a witness on his own behalf, that he is an employee of the Kendall Manufacturing Company, whose domi-

cile is in the State of Rhode Island; that he did not own or
have any interest in the merchandise which he offered for
sale, nor in the proceeds of such sale; that "Soapine" was
manufactured by the Kendall Company, in the State of Rhode
Island, and that he was paid regular wages for his services as
the agent and salesman of the said company; that the "Soap-
ine," so offered by him for sale, was the property of the Ken-
dall Manufacturing Company; that it was shipped by the
said company to him as their agent in Richmond, and by him
offered for sale, and sold for the company; that he made daily
reports of sales, and received weekly wages; that all the offi-
cers of the company are non-residents of the State of Vir-
ginia; that he was also a non-resident of the State of
Virginia, being a citizen of the State of Maryland; that the
merchandise offered for sale were the products and manufac-
ture of the Kendall Company; that they were not injurious
to health, nor damaging to morals, but to be used in cleansing
and purifying, and had been for a long time used for these
purposes; and that the said company and the said Myer have
no place of business in Richmond.

Thereupon the Commonwealth asked the court to instruct
the jury as follows:

"If the jury believe from the evidence that John Myer did,
as charged in the information, go from street to street in the
city of Richmond, with a wagon and horse, and that in the
wagon said Myer carried merchandise called 'Soapine,' and
further believe that said Myer, without the license required
by law, sold, or offered for sale, said merchandise, viz.,
'Soapine,' then they must find him guilty, and assess him
with a fine, so that the same shall be not less than one hun-
dred ($100) nor more than five ($500) hundred dollars for each
offence."

Which was refused. And Myer, the defendant, asked the
following instructions, which were given:

" The court instructs the jury that if they believe from the evidence that the defendant, at the time he offered to sell and sold the commodity in the information mentioned, known as ' Soapine,' was the employee or representative of the Kendall Manufacturing Company, and that the said defendant had no other interest in said goods, and that the said goods were the product and manufacture of said Kendall Manufacturing Company, and that the company, as such manufacturers, at the time of the sale, were engaged, through their representative, the said defendant, in selling and vending their products, then they should find the defendant not guilty."

" The court further instructs the jury that if they believe from the evidence that the defendant, at the time he offered to sell and sold the commodity in the information mentioned, known as ' Soapine,' was in the employ of the Kendall Manufacturing Company, of the State of Rhode Island; that such goods were the product and manufacture of the Kendall Manufacturing Company, and that the alleged offence, mentioned in the information, consisted of said non-resident corporation, through its employee, the defendant, also a nonresident, offering its said commodity, duly manufactured by it, for sale in the city of Richmond, Va., and that such article was not injurious in its character, either to public health or morals, but was useful as a cleansing commodity, to be used for general household purposes, and, as such, had been long in general use, then they must find the defendant not guilty, although they may believe he had taken out no license to sell such commodity."

To the refusal of the court to give the instruction asked by it, and to the giving of the instructions asked by the defendant, the Commonwealth excepted.

The statute under which this prosecution took place is to be found in sections 32 and 33 of the Acts of Assembly 1889-90, page 217. Section 32 provides:

Opinion.

." That any person who shall carry from place to place any goods, wares, or merchandise, and offer to sell or barter the same, or actually sell or barter the same, *in transitu* or otherwise, shall be deemed to be a peddler, and any person licensed as a peddler may sell any personal property a merchant may sell, or he may exchange the same for other articles. * * * Any peddler who shall peddle for sale, or sell or barter, without a license, shall pay a fine of not less than one hundred nor more than five hundred dollars for each offence. * * * This section shall be construed to include persons engaged in peddling lightning-rods : provided, however, that any manufacturer who has been assessed and paid upon the capital employed by him, under Schedule ' C ' of this act, shall not be required to take out the license named in this section for the privilege of selling articles actually manufactured by him : provided, also, that all persons who do not keep a regular place of business (whether it be in a house, or vacant lot, or elsewhere), open at all times in regular business hours, and at the same place, who shall offer for sale goods, wares, and merchandise, shall be'deemed peddlers under the provisions of this act."

Section 33 prescribes the license tax to be paid for the privilege of peddling, or bartering, in any county or corporation, with a proviso annexed to it, which we do not deem it necessary to discuss.

The question presented in the record is as to the constitutionality of section 32 of the act of 1889- 90, just quoted.

On the part of the defendant in error, it is contended that this statute is repugnant to Article IV., section 2, clause 1, and to Article I., section 8, clause 3, of the Constitution of the United States, and is therefore null and void.

Upon the part of the Commonwealth, it is contended that it was merely an ordinary tax upon the business or occupation of a peddler, equal and uniform in its operation upon all engaged in that business, and is not an attempt to regulate commerce between the States, and can have no such tendency.

It is not our purpose to attempt any general discussion of the very numerous decisions of the Supreme Court of the United States upon this and kindred subjects. It is, indeed, happily for us, unnecessary to do so, as it has been done in a

recent and able opinion delivered by Mr. Justice Gray in the case of *Emert* v. *State of Missouri*, 156 U. S. 296. That a State may impose a tax upon the occupation of itinerant peddlers, and require them to obtain a license to practice their trade, is fully sustained by that case; nor can it be denied that the Virginia statute correctly describes those who shall be deemed to be peddlers. " Any person who shall carry from place to place goods, wares, or merchandise, and offer to sell or barter the same, shall be deemed to be a peddler "; for " the leading primary idea of a peddler," says Chief Justice Shaw, in *Commonwealth* v. *Ober*, 12 Cush. 493, "is that of an itinerant or travelling tradesman, who carries goods about in order to sell them, and who actually sells them to purchasers, in contra-distinction to a trader who has goods for sale and sells them in a fixed place of business." In *Emert* v. *State of Missouri* the statute under consideration declares " that whoever shall deal in the selling of any goods, wares, or merchandise, (except books, charts, maps, and stationery,) by going from place to place to sell the same," is deemed to be a peddler, and is prohibited from dealing as a peddler without a license.

The facts agreed were that on a certain day the Singer Manufacturing Company was a corporation of New Jersey, and that the defendant was, on and prior to that day, in the employment of that company, and on that day, in pursuance of that employment, and having no peddler's license, was engaged in going from place to place in Montgomery county, with a horse and wagon, soliciting orders for the sale of the company's sewing machines, and having with him in the wagon one of those machines, the property of the company, and manufactured by it in New Jersey.

In deciding this case, Mr. Justice Gray says: " The statute in question is not part of a revenue law. It makes no discrimination between residents or products of Missouri and

those of other States; and manifests no intention to interfere, in any way, with interstate commerce. Its object in requiring peddlers to take out and pay for licenses, and to exhibit their licenses on demand to any peace officer, appears to have been to protect the citizens of the State against cheats and frauds, or even thefts, which, as the experience of ages has shown, are likely to attend itinerant and irresponsible peddling from place to place and from door to door."

In *Howe Machine Co.* v. *Gage,* 100 U. S. 676, the Supreme Court of the United States held that the statute of the State of Tennessee, as construed by the Supreme Court of Tennessee, made no discrimination in the tax which it imposed on account of the place of growth, or produce of material, or of manufacture, but that it applied alike to the sale of sewing machines manufactured in the State of Tennessee and out of it; and that, inasmuch as all sewing machines were placed upon the same footing with respect to the tax complained of, its action was not unusual or unreasonable, and the State had an unquestionable right to impose the burden.

In *Woodruff* v. *Parham,* 8 Wall. 123, it was held by Mr. Justice Miller that " a simple tax on sales of merchandise, imposed alike on all sales made in Mobile, whether the sales be made by a citizen of Alabama or of another State, and whether the goods sold are the produce of that State or some other, was valid and constitutional, there being no attempt to discriminate injuriously against the products of other States, or the rights of other citizens; it was therefore not an attempt to fetter commerce among the States, or to deprive the citizens of other States of any privilege or immunity possessed by citizens of Alabama   But," said the court, " a law having such operation would be an infringement of the provisions of the Constitution which relate to those subjects, and therefore void."

In *Ward* v. *Maryland,* 12 Wall. 418, a statute of Maryland

which required all traders residing within the State to take out licenses at certain rates, and subjecting to indictment and penalty persons not residents of the State, who, without taking out a license at a higher rate, should sell or offer for sale, by card, sample, or trade-list, within the limits of the city of Baltimore, any goods, wares, or merchandise whatever, other than agricultural products and articles manufactured in the State, was held to be unconstitutional, because it imposed a discriminating tax upon the residents of other States.

In *Webber* v. *Virginia*, 103 U. S. 344, the statute there called in question was held to be unconstitutional, because it made " a clear discrimination in favor of home manufacturers and against the manufacturers of other States."

Enough has been said, and sufficient authorities have been cited, to show the line of distinction which runs between those statutes which have been held constitutional and those which have been declared void for repugnancy to the Constitution. The right of the State to impose a license tax upon peddlers, where it operates uniformly upon all citizens, and does not discriminate in favor of citizens of Virginia as against citizens of other States, or where the tax imposed is in the exercise of the police power, and is not a regulation of commerce under cover of that power, although incidentally it may have that effect, has been uniformly maintained ; but where any injurious discrimination is discovered in favor of the resident as against the non-resident, or with respect to the sales of articles manufactured in this State over similar articles manufactured abroad, the State laws are declared to be void, as repugnant to the Constitution of the United States.

In this case, the defendant in error was engaged in selling an article owned and manufactured by the Kendall Manufacturing Company, of Rhode Island. It is not pretended that it was hurtful or injurious in any way, and the same article, if manufactured within the limits of the State of Vir-

ginia, could have been sold under exactly the conditions set out in the information in this case and made the basis of prosecution against the defendant in error, without incurring any penalty whatever. A citizen of Virginia who had manufactured the identical article could have hawked or peddled it from place to place within the limits of the Commonwealth without incurring the penalties denounced by section 32. If that be so, then the statute under consideration does injuriously discriminate against the products of other States, and the rights of other citizens, and is an attempt to fetter commerce among the States, and does deprive the citizen of another State of the privileges and immunities possessed by citizens of this State, and is an infringement of the provisions of the Constitution, and therefore void.

It follows that the judgment of the Hustings Court of the city of Richmond must be affirmed.

*Affirmed.*