# Richmond.

## COMMONWEALTH v. ARMOUR & CO.

### January 13, 1916.

### Absent, Cardwell, J.

1. TAXATION—*Manufacturers—Merchant's License—Tax Bill 1915, Section 45—Nonresidents—Discrimination—Constitutional Law—Statutes.*— Section 45 of the tax bill of 1915 (Acts 1915, p. 233) which allows a manufacturer to sell his products at the place of manufacture, without taking out a merchant's license, but requires a merchant's license tax regulated according to purchases to be taken out by every manufacturer, resident and nonresident, who sells goods, wares and merchandise at a fixed place apart from the place of manufacture, and to return as purchases, not only goods bought from others, but also goods manufactured by him and offered for sale at his storehouse, separate and apart from the place of manufacture, does not unjustly discriminate against the foreign manufacturer, nor deny to him the equal protection of the law, nor attempt to regulate commerce between the States, but is a valid enactment.

2. TAXATION—*Tax Bill 1915, Section 45—Conflicting Provisions—Statutes.*—When section 45 of the tax bill of 1915 (Acts 1915, p. 233) is read as a whole, as it should be, and the object of the statute is considered, the first and second sentences of the statute do not conflict with each other.

3. STATUTES—*Construction—Constitutional Law.*—If a statute is susceptible of two constructions, that one should be adopted which renders the statute free from constitutional objection and gives it a sensible operation.

4. STATUTES—*Construction—Taxation—Instructions of Auditor.*—If the construction of a revenue statute is doubtful, the instructions issued by the Auditor of Public Accounts to the commissioners of the revenue who are to put the statute into operation is entitled to great weight. In the case in judgment, these instructions are clear and explicit and wholly free from the constitutional objections urged against the statute.

5. STATUTES—*Proviso—How Far Extended.*—A proviso to one section of an act cannot be applied to another section of the same act unless it manifestly appears, by reference to the whole act, that it was the intention of the legislature that such proviso should limit the operation of other sections than that to which it is appended.

Appeal from a decree of the Circuit Court of the city of Richmond. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*John Garland Pollard, Attorney-General* and *C. B. Garnett, Assistant Attorney-General,* for .the Commonwealth.

*Eppa Hunton, Jr.,* and *H. T. Hall,* for the appellees.

KEITH, P., delivered the opinion of the court.

Armour and Company, is a corporation organized under the laws of the State of New Jersey, and duly licensed and qualified to do business in this State. Its business consists of slaughtering animals and preparing their carcasses for sale, and it has packing houses in several States. Its chief business is that of a manufacturer. In disposing of its products it has established at various points in Virginia distributing houses, and the commissioners of the revenue in the cities and counties in which it does business have assessed it with a merchant's State license tax pursuant to the provision of section 45. of the tax bill, approved March 19, 1915.

Armour and Company filed its bill in the Circuit Court of the city of Richmond, praying that the officials of the State be enjoined from the assessment of the tax which is being made against it upon the ground that the statute under which they are acting is unconstitutional as being an interference with interstate commerce and violative of Article 1, sec. 8, clause 3, of the Federal Constitution; that it is in conflict with Article IV, section 2, of said Constitution, which guarantees equal privileges and immunities to the citizens of the several States, and further violates Article XIV, section 1, which forbids any State from making and enforcing laws which

abridge the privileges or immunities of citizens of the United States, and guarantees to them the equal protection of the laws.

The defendants filed their answer, in which they put in issue every material allegation of the bill, with the exception that the allegations made in the second paragraph of the bill as to the character and extent of the business done by Armour & Co. are expressly admitted to be true.

The case was finally heard before the circuit court upon the original and amended bill, the answers of the defendants and the exhibits, and a decree was entered enjoining the various State officers from requiring Armour and Company to include as purchases the wares, goods and merchandise manufactured by it outside of Virginia and brought or shipped therein for sale, in its application for a merchant's license to do business in the respective cities and counties of the Commonwealth.

The auditor of public accounts addressed a communication to the commissioners of the revenue of the State, in which he calls their especial attention to sections 45 and 46 of the tax laws, as amended by the act approved March 19, 1915, requiring all manufacturers who engage in this State in the business of a merchant at a place other than the place of manufacture to take out merchant's licenses, and that this requirement applies not only to nonresident manufacturers who establish a store or place of sale in this State, but also to resident manufacturers who open a place for the sale of their goods other than the place of manufacture. He instructs them in this letter, that "a manufacturer engaged in business in this State who is taxed upon the capital employed in the business may, without a merchant's license, sell at the place of manufacture, but nowhere else, except by sample, the goods, wares and merchandise manufactured by him, and a nonresident manufacturer establishing a place of manufacture in this State, and taxed by this State on his capital employed in that business, would have the same privilege;" that "if either a nonresident manufacturer or a resident manufacturer desires

to sell the goods, wares, and merchandise manufactured by
him at a definite place or store other than the place of manu-
facture, then such manufacturer, either resident or nonresident,
must, as aforesaid, take out a merchant's license, even though
this definite place or store be located in the same city or town
in which his place of manufacture is established. When a
manufacturer establishes a place or store for the sale of his
goods other than at his place of manufacture, the State
merchant's license tax required by sections 45 and 46 of the
tax laws is graded according to his purchases, and all goods,
wares and merchandise manufactured by such merchant and
sold, or offered for sale, at a place other than his place of
manufacture shall be considered as purchases. In other
words, both the resident and nonresident manufacturer who
establish a store or place of sale other than the place of
manufacture are required to take out a State merchant's
license, and the amount of the State license tax is to be graded
not only by the amount of purchases made by such manufacturer
from other manufacturers, but also by the goods, wares and
merchandise manufactured by him and sent from the place of
manufacture to his store for sale; and he is required to report
to the commissioner not only the amount of goods purchased
by him from other manufacturers and offered for sale, but
also the amount of the goods manufactured by him either
within or without this State and offered for sale by him at his
store or definite place in this State other than the place of
manufacture." The letter of instruction concludes with the
statement, that the provisions of sections 45 and 46 are to be
enforced alike with respect to manufacturers in this State and
manufacturers out of this State who engage in this State in
the business of merchants elsewhere than at the place of
manufacture.

In the case of *Commonwealth* v. *Myer,* 92 Va. 809, 23 S. E.
915, 31 L. R. A. 379, this court said: "The State of Virginia
has the right to impose a tax on peddlers, where it operates

uniformly upon all citizens and does not discriminate in favor of citizens of this State and against citizens of other States, or where the tax imposed is in the exercise of police powers and not a regulation of commerce under cover of that power, although incidentally it may have that effect; but where any injurious discrimination is made in favor of the resident against the nonresident, or with respect to the sales of articles manufactured in this State over similar articles manufactured abroad, the law is repugnant to the Constitution of the United States, and therefore void."

The principle enunciated in that case has been uniformly followed by this court, and we shall now inquire whether it has been violated by the statute under consideration.

In *Morris & Co.* v. *Commonwealth,* 116 Va. 912, 83 S. E. 408, sections 45 and 46 of the tax law, as they stood at the time of that decision, imposed on merchants a license tax graduated in amount by their actual purchases during the preceding twelve months; and it was held that "a nonresident pork packing company, which does not sell in this State pork or beef slaughtered by it, but only sausage, head cheese, mince-meats and other like products produced by it, and articles purchased by it from others, is not liable to the license tax imposed by section 45 of the tax bill as to such articles manufactured by it. As to such articles it is a manufacturer and not a merchant, and the license tax, which includes butchers, is to be graduated by its 'actual purchases.' "

To meet this decision section 45 was amended by an act approved March 19, 1915, which declares, among other things, that "all goods, wares and merchandise manufactured by such merchant and sold or offered for sale in this State, as merchandise, shall be considered as purchases within the meaning of this section; provided that this section shall not be construed as applying to manufacturers taxed on capital by this State, who offer for sale at the place of manufacture goods, wares and merchandise manufactured by them." The section

then provides that "To ascertain the amount of purchases it shall be the duty of such merchant, on the first day of April of each year, or within ten days thereafter, to make report in writing, under oath, to the commissioner of the revenue for the district for which he was licensed, showing purchases as above defined, and also all goods, wares and merchandise manufactured and sold or offered for sale in this State during the next preceding twelve months; except such goods, wares and merchandise as is manufactured by persons, firms and corporations taxed on their capital by this State."

It will be observed that in section 45 the very broadest language is used—"Every person, firm, company or corporation engaged in the business of a merchant shall pay a license tax   .   .   ." That language, of course, embraces all resident as well as nonresident persons, etc., who engage in the business of a merchant, and requires the same license tax of each and all of them. Then follows the proviso that "this section shall not be construed as applying to manufacturers taxed on capital by this State, who offer for sale at the place of manufacture goods, wares and merchandise manufactured by them," which means, in the case of a nonresident firm, company or corporation a tax upon that part of its capital stock employed in the conduct of its business in this State. That part of the section which deals with the mode of ascertaining the amount of the purchases is equally comprehensive in its terms and applies to all who are embraced in the first section of the statute.

But it is claimed that that part of the section which declares that it shall not be construed as applying to manufacturers taxed on capital by this State who offer at the place of manufacture goods, wares and merchandise manufactured by them, is a discrimination against the foreign manufacturer, because, having no place of manufacture within the State, he cannot have the advantage of the exemption which is enjoyed by the domestic manufacturer.

This point was disposed of by the Supreme Court of the

United States in the case of *New York* v. *Roberts,* 171 U. S. 658, 19 Sup. Ct. 58, 43 L. Ed. 323. In that case a statute of New York was construed, which required every corporation organized under the laws of New York, or any other State or country, and doing business in New York, except certain companies, including manufacturing corporations wholly engaged in carrying on manufacture within the State, to pay into the State treasury annually a tax upon its business, based upon the amount of the capital stock actually employed within the State. Parke, Davis & Co., was a corporation organized under the laws of the State of Michigan for the manufacture and sale of chemical and pharmaceutical preparations. Its factory was situated in the city of Detroit. The corporation established a warehouse and depot in the city of New York and there kept on hand varying quantities of its manufactured products, which were there sold at wholesale in original packages. The company paid an annual rental of $12,500 for its place of business in New York, and employed fifty persons in its New York branch, and for the years 1890 to 1894, inclusive, expended for this branch from $102,000 to $172,000. The average stock of goods sent from Michigan and carried in New York was $50,000. It also employed in New York during that time a continuing capital of from $23,000 to $62,000, used in the purchase and sale of crude drugs. Upon this state of facts the comptroller of New York imposed for 1894 and five previous years an annual tax based upon the sum of $90,000 as capital employed within the State. Parke, Davis & Co. filed a petition before the Supreme Court of New York, praying for a writ of *certiorari* directed against the comptroller in order to correct the assessment, alleging that as said company was a manufacturing corporation, it was exempted from taxation under the laws of the State of New York, and that the comptroller erred in deciding that goods manufactured by the corporation and stored in its depot in New York was capital employed in the State within the mean-

ing of the statute; and that if the statute was correctly interpreted by the comptroller then it was unconstitutional and void as in contravention of the Constitution of the United States and amendments thereto. By successive appeals the case was brought to the Supreme Court of the United States, which, after holding that the construction put upon the statute by the State of New York was binding upon the Supreme Court of the United States, took up the contention that the corporation, being a Michigan corporation and having complied with the provisions of the law for transacting business within the State of New York, was denied the equal protection of the law when subjected to a tax from which were exempted other corporations, foreign and domestic, which wholly manufactured the same class of goods within that State, and that such a tax was an unjust discrimination against the Michigan corporation whose place of manufacture was in the State of Michigan. On this point the court said: "If the object of the law in question was to impose a tax upon products of other States while exempting similar domestic goods from taxation, there might be room to contend that such a distinction was constitutionally objectionable as tending to affect or regulate commerce between the States. But we think that, obviously, such is not the purpose of this legislation." Quoting from the statute, the court then goes on to say: " 'Every corporation, joint-stock company or association whatever, now or hereafter incorporated, organized or formed under, by or pursuant to law in this State, or in any other State or country and doing business in this State . . . shall be liable to and shall pay a tax as a tax upon its franchises or business into the State treasury annually, to be computed as follows:' It will be perceived that the tax is prescribed as well for New York corporations as for those of other States. It is true that manufacturing or mining corporations wholly engaged in carrying on manufacturing or mining ores within the State of New York are exempted from this tax; but such exemption

is not restricted to New York corporations, but includes corporations of other States as well, wholly engaged in manufacturing within the State.

"In construing this statute it was held in the case of *People, Blackington & Co.* v. *Roberts* (38 N. Y. Sup. 872), that a New York corporation which carried on a manufacturing business in another State was liable to this tax; and this decision was affirmed by the New York Court of Appeals, 151 N. Y. 652, (46 N. E. 1150).

"The tax is graded according to annual dividends, and originally was assessed upon the entire capital of a corporation; but the statute was amended in 1885 so as to read: 'The amount of capital stock which shall be the basis for tax under the provisions of section 3, in the case of every corporation, joint-stock company and association liable to taxation thereunder, shall be the amount of capital stock employed within this State.' So that it is apparent that there is no purpose disclosed in the statute either to distinguish beween New York corporations and those of other States to the detriment of the latter, or to subject property out of the State to taxation."

The name being changed, the law as there declared is, we think, precisely applicable to the case in hand.

In *Plummer* v. *Coler,* 178 U. S. 115, 132, 20 Sup. Ct. 829, 836, 44 L. Ed. 999, the court, in considering the case of *New York* v. *Roberts, supra,* used the following language: "An effort was made to have a tax imposed against corporations based upon 'capital employed within the State' declared invalid in that particular case, because a portion of such capital consisted of imported goods in original packages; and this court said: 'Again, it is said that, even assuming that the importation of crude drugs and their sale in the original package constituted a portion of the corporate business, no tax could be imposed by the State under the doctrine of *Brown* v. *Maryland,* 12 Wheat. 419, 6 L. Ed. 678. But that case is inapplicable. Here no tax is sought to be imposed directly on

imported articles or on their sale. This is a tax imposed on the business of a corporation, consisting in the storage and distribution of various kinds of goods, some products of their own manufacture and some imported articles. From the very nature of the tax, being laid as a tax upon the franchise of doing business as a corporation, it cannot be affected in any way by the character of the property in which its capital stock is invested."

In *Reymann Brewing Co.* v. *Brister,* 179 U. S. 445, 21 Sup. Ct. 201, 45 L. Ed. 269, the brewing company, a corporation of the State of West Virginia, with its principal office in the city of Wheeling, filed its bill of complaint in the Circuit Court of the United States for the Southern District of Ohio, seeking to restrain and enjoin the treasurer of Jefferson county, Ohio, from retaining possession of certain personal property belonging to the brewing company, which he had seized in enforcing what was known as the Dow Tax Law of the State of Ohio. Under the terms of the law it was provided that, "upon the business of trafficking in spirituous, vinous, malt or other intoxicating liquors there shall be assessed annually, and paid into the county treasury as hereinafter provided, by every person, corporation or partnership engaged therein, and for each place where such business is carried on by or for such person, corporation or partnership, the sum of three hundred and fifty dollars." It was alleged by the complainant whose property had been seized to enforce the payment of the assessment, that the statute was void because it discriminated in favor of the manufacturers and brewers of beer who had their plants located within the State of Ohio as against those who had their plants located in other States, and because it constituted in its practical operation a regulation of commerce between the States. On this point the court said:

"So far as the terms of the statute are concerned, they do not disclose any intention to discriminate between foreign and domestic dealers in intoxicating liquors, as the tax in question

is to be assessed upon every person, corporation or copartnership engaged in the business of trafficking in such liquors. But it is contended that the effect of the legislation necessarily results in such a discrimination, because of the provisions of the 8th section of the statute, which is in the following words:

" 'The phrase "trafficking in intoxicating liquors," as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacramental purposes, but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof, at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time.'

"The effect of this is claimed to be that the domestic manufacturer may sell liquor, in quantities of one gallon or more, at the place of manufacture, without being subjected to the tax, and that thus he has an advantage over the foreign manufacturer, who can only sell, in Ohio, at some other place than the place of manufacture, and is thereby subjected to the tax. In other words, while the domestic manufacturer must pay the tax if he sells at other places than the place of manufacture, yet as he is declared not to be within the act in selling at the place of manufacture in quantities not less than one gallon at any one time, such a provision operates as an illegal discrimination against the foreign competitors, who must necessarily sell at places other than the place of manufacture.

"Under this provision, the manufacturers, whether within or without the State, may sell at the manufactory and ship to any part of the State of Ohio, and the incidental disadvantage that the foreign manufacturer is under that if, instead of selling at the place of his plant, he wishes to establish a place within the State of Ohio, he is obliged to pay the tax, does not appear to arise out of any intention on the part of the State legislature to make a hostile discrimination against

foreign manufacturers. If an Ohio corporation or copartnership should establish its place of manufacture in another State, it would be subjected to the tax if it sold intoxicating liquor at a place within the State of Ohio; and if a foreign corporation should manufacture at a place within Ohio, it would sell its product, in quantities not less than one gallon, without being subjected to the tax." The opinion then goes on to cite *New York* v. *Roberts, supra,* and to reaffirm the law as there stated.

We think the authorities cited dispose of the contention that the statute is discriminatory because it excepts from its operation domestic manufacturers who sell their products at the place of manufacture. We have been unable to discover (in the language of *Commonwealth* v. *Myer, supra*) that any injurious discrimination is made in favor of the resident against the nonresident, or with respect to the sale of articles manufactured in the State over similar articles manufactured abroad.

It is contended that the second sentence of section 45 is in conflict with the first sentence. When the section is read as a whole and the object of the statute is considered, we do not think that any conflict appears. The statute was intended to reach the merchant who is also a manufacturer, and to protect the manufacturer in so far as he does not engage in the business of a merchant in competition with other merchants. The legislature, therefore, required a manufacturer, who is also a merchant, to take out a merchant's license for doing the business of a merchant at a fixed place apart from the place of manufacture, and to return as purchases, not only goods bought from others, but also goods manufactured by the merchant and offered for sale at his store, the same being separate and apart from the place of manufacture. Thus construed, no conflict appears.

But is a well-settled rule of construction that, if a statute be susceptible of two constructions, we should adopt that con-

struction which renders the statute free from constitutional objection and gives it a sensible operation.

We are further of opinion that if the construction were doubtful the letter of instruction issued by the auditor of public accounts to the commissioners of revenue, and which was their exclusive guide in the practical operation of the law would be entitled to very great weight; and those instructions are wholly free from any attempt to discriminate in favor of resident as against non-resident applications for a merchant's license. The commissioners are in plain terms told that all manufacturers engaged in this State in the business of a merchant at a place other than the place of manufacture are required to take out merchants' licenses; and this requirement applies not only to nonresident manufacturers who establish a store or place of sale in this State, but it also applies to resident manufacturers who open a place for the sale of their goods other than the place of manufacture. They are told that a manufacturer engaged in business in this State who is taxed upon the capital employed in the business may, without a merchant's license, sell at the place of manufacture, but nowhere else, except by sample, the goods, wares and merchandise manufactured by him, and a nonresident manufacturer, establishing a place of manufacture in this State, and taxed by this State on his capital employed in that business, would have the same privilege— meaning, as we have hereinbefore said, so much of the capital stock as is actually employed within the limits of this Commonwealth. They are told that if either a nonresident manufacturer or a resident manufacturer desires to sell the goods wares and merchandise manufactured by him at a definite place or store other than the place of manufacture, then such manufacturer, either resident or nonresident, must take out a merchant's license even though this definite place or store be located in the same city or town in which his place of manufacture is established. And finally he declares, that both the resident and nonresident manufacturer who establishes a store

or place of sale other than the place of manufacture is required to take out a State merchant's license, and the amount of the State license tax is to be graded not only by the amount of the purchases made by such manufacturer from other manufacturers, but also by the goods, wares and merchandise manufactured by him and sent from the place of manufacture to his store for sale.

But it is claimed that there is a conflict between section 45 and section 47, and that section 47, being the later section, must prevail.

By section 47 it is enacted that, "Every railroad company or other incorporated company in this Commonwealth, whether such privilege be granted in its charter or not, which shall sell any mineral or forest product, or any other article, shall be taxed as other merchants dealing in like commodities. This act shall apply to companies keeping commissaries, or having agents for the sale of any other article than their own product; provided, that nothing herein contained shall prevent a railroad company from buying and distributing to its employees, as part of their compensation, meat, meal and flour, at the cost price thereof; but nothing in the foregoing shall be construed as requiring a company selling the products of their own mines, or lands, or manufacturers, to pay a merchant's license for so doing."  The contention is that the proviso is directly inconsistent with section 45, and that by force of the proviso no license tax can be levied upon Armour & Co. for selling the products of its own manufacture.

In *United States* v. *Packages of Spirituous Liquors* (D. C.), 65 Fed. 980, the court said: "A general rule of interpretation is that a proviso must be construed with reference to the subject matter of the section of which it forms a part, unless there is manifest legislative intention that it should limit the operation of the other sections of the act."

In *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 22 L. Ed. 80, in discussing the effect of a proviso to an act

of Congress, the court said: "The broad construction of the proviso contended for makes it plainly repugnant to the body of the act, and it is, therefore, inadmissible."

In 2 Lewis Sutherland Statutory Construction (2d Ed.), section 352, it is said: "The natural and appropriate office of the proviso being to restrain or nullify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter."

In *Calloway* v. *Harding*, 23 Gratt. (64 Va.) 542, this court held that a proviso to one section of an act cannot be applied to another section of the same act, unless it manifestly appears, by reference to the whole act, that it was the intention of the legislature that such proviso should limit the operation of other sections than that to which it is appended.

So far from its appearing to have been the manifest intention of the legislature that the proviso in section 47 should apply to the entire act, we are of opinion that it is manifest that the legislature did not intend it so to do, as it would be plainly repugnant to the body of the act.

We are of opinion that the provisions of the statute called in question are constitutional, that their proper construction does not involve a conflict between the several sections; and that upon the whole case the decree of the circuit court should be reversed.

*Reversed.*