# Richmond

## COMMONWEALTH V. CRADDOCK-TERRY COMPANY.

January 20, 1921.

Absent, Sims, J.

1. TAXATION.—*Construction in Favor of Taxpayer.*—In an inquiry as to the true construction to be put upon a tax statute, all fair doubts must be resolved in favor of the taxpayer, for no tax can be collected by the State except such as is authorized by law.

2. TAXATION.—*Merchant and Manufacturer.*—Under tax bill, secs. 45, 46, Acts 1915, p. 233, manufacturers who sell their goods at a place or store, other than the place of manufacture, even though such place be located in the same city or town, were thereafter required to include such goods as a part of their purchases, upon which they were taxed as merchants for the privilege of thus conducting their business, and the merchants' license law expressly provides that there shall be no other tax upon the capital of merchants employed in the mercantile business. This merchant's license tax thus imposed upon manufacturers who thus sell their own products, is a lawful exercise of the taxing power.

3. TAXATION.—*Merchant and Manufacturer.*—By tax bill, secs. 45, 46, Acts 1915, p. 233, the legislature has expressly required a manufacturer, who is also a merchant, to make an absolute severance of its manufacturing capital from the capital which he uses in his own mercantile business, because it has provided for the two entirely different methods of taxation applicable to those two clearly distinguishable classes of business. These taxes are to be assessed against one who is engaged in both classes of business just as they would be if there were two. entirely independent persons or corporations, one engaged in manufacturing, and the other in merchandizing.

4. TAXATION.—*Merchant and Manufacturer—Case at Bar.*—In the instant case a corporation commenced business in a city as

a wholesale shoe merchant, and later commenced to manufacture the larger portion of the shoes which it sold as a merchant. It treated the manufacturing business as separate in every respect from its mercantile business. It was claimed for the State that goods manufactured by the company and transferred and charged to its mercantile establishment nevertheless continued to be capital of the company invested in its manufacturing business, and taxable as such until sold, whereas the company claimed that the goods became a part of their stock in trade as merchants, commingled with goods which it bought from other manufacturers, and that therefore it no longer represented capital invested in the manufacturing business, notwithstanding it imposed by this method upon its mercantile branch the entire expense of selling and distributing its manufactured goods.

*Held:* That the company's contention was correct. Only so much of the capital of the company as was in fact devoted to its manufacturing business is required to be taxed as capital.

5. TAXATION.—*Merchant and Manufacturer—Case at Bar.*—The representatives of the Commonwealth are not vested with authority to enforce their view that, as a matter of equity and good conscience, the company ought to have invested in the manufacturing branch of its business more capital than the company found necessary for the conduct of that business, and that this branch of the business should incur the expense of distributing the goods when the company, in the absence of any legal inhibition, determined that it would maintain its original status as a mercantile company and impose the entire expense of sale upon its mercantile branch rather than upon its manufacturing branch.

Appeal from a decree of the Corporation Court of the City of Lynchburg. Decree for defendant. Commonwealth appeals.

*Affirmed.*

The opinion states the case.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, J. Vaughan Gary, Jno. L. Lee,* and *Volney E. Howard,* for the Commonwealth.

*Harrison & Long,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

This suit was brought by the State for the recovery of the taxes on capital alleged to have been omitted by the Craddock-Terry Company, as manufacturers of shoes, for the years 1903-1915, inclusive, and under the authority of chapter 45 of the Acts of Assembly of 1916, p. 729. There is no controversy as to the facts, and both litigants rely upon the same circumstances to justify their respective claims.

The Craddock-Terry Company, a corporation, commenced its business in the city of Lynchburg as a wholesale shoe merchant in the year 1898, purchasing all of its goods from manufacturers and reselling the same as wholesale merchants to other dealers. Nearly fourteen years later, about the year 1901, the company commenced the business of manufacturing a portion of the shoes which it sold as a merchant. ·It increased its business of manufacturing shoes and related goods rapidly, so that soon it manufactured the larger part of the merchandise which it also sold as a wholesale merchant, and at the time this controversy arose the proportion of goods thus annually manufactured by it greatly exceeded the proportion bought by it for sale from other manufacturers.

The true amount of its capital invested in its manufacturing business, which is liable to the State for an *ad valorem* tax, is to be determined. Its method was to treat the manufacturing business as separate in every respect from its mercantile business, there being different places of business, a separate organization and a different set of books for each branch of its business. For the State it is claimed that the goods so manufactured by the company and actually transferred from its factories to its mercantile establishment nevertheless continued to be capital of the

company invested in its manufacturing business and taxable as such until sold, whereas the company claims that when it thus delivered the manufactured goods to its mercantile establishment for sale, they became thereafter a part of their stock in trade as merchants, commingled with the goods which it bought from other manufacturers, and that therefore they no longer represented capital invested in the manufacturing business.

[1] The question thus raised must be determined by the true construction to be put upon certain taxing statutes. We are not authorized to determine what would be a good or better method of taxation, or whether the method prescribed by law affords to a manufacturer who is also engaged in the mercantile business an opportunity to reduce the gross amount of his taxes by such a method of conducting the several branches of his business, but simply to inquire what the statutes require or permit, and in such an inquiry all fair doubts must be resolved in favor of the tax-payer, for no tax can be collected by the State except such as is authorized by law.

Having commenced business as wholesale merchants, the company has from the inception of its manufacturing business always claimed the right to allocate a certain part of its capital to the manufacturing branch, and has paid taxes upon the *ad valorem* basis upon the amount of its capital so allocated. This was not a bookkeeping method merely adopted by the company as a means of evading or reducing its tax obligations. It became necessary in order to comply with the taxing statutes, for while authorized to conduct both branches of business, that portion of its capital which was employed in manufacturing was subjected to an *ad valorem* tax, while that employed in the mercantile business was not; so that the true amount of the capital thus employed in its manufacturing business could not have been determined unless this, or some other adequate method, had

9

been devised which would truthfully show the amount of its capital which was thus diverted from its mercantile business. This severance of capital was, however, not made in an accurate or proper way, for it appears that after this controversy arose, but before this suit was instituted, the company accepted the privilege afforded by the act of March 22, 1916 (Acts 1916, p. 826), amending section 508 of the Code, and voluntarily disclosed certain sums as omitted capital for the years referred to. These voluntary returns have been accepted as correct by the local board of review and by the trial court, which entered a decree adjudging, "that the capital of the defendant company invested in its manufacturing business is taxable on the *ad valorem* basis, and that the method adopted by the local board of review in ascertaining the amount of the same for taxation for the year 1915, and also in ascertaining the amounts omitted from taxation for the years 1903 to 1914, inclusive, was correct, and that there is no further liability on the defendant company for taxes on said capital for said years," and dismissed the bill. It is of this decree that the Commonwealth is here complaining.

As is well understood, the method of taxation of merchants in Virginia is different from the method of taxation of manufacturers. The merchants' tax for many years has been and is at present a graduated license tax, based upon the gross amount of the purchases made by the merchant and reported to the taxing officials under oath, and such license tax is "in lieu of all taxes for State purposes on the capital actually employed in the business (tax bill, sec. 46, Acts 1915, p. 234), whereas the method of taxation of manufacturers is an *ad valorem* tax imposed upon the amount of capital invested in that business not otherwise taxed (tax bill, schedule C, sec. 8, clause 3, Acts 1915, p. 161). Prior to the year 1915 the manufacturer was liable to no other tax upon goods manufactured and sold

by him, so that up to 1915 the Craddock-Terry Company paid its license taxes as a merchant based only upon purchases made by it from others. In 1915 the statute imposing merchants' license taxes (tax bill, secs. 45, 46, Acts 1915, p. 233) was amended, and the change, together with the interpretation thereof by the Auditor of Public Accounts, is embodied in a circular referred to in the case of *Commonwealth* v. *Armour & Co.*, 118 Va. 242, 87 S. E. 610, affirmed by the Supreme Court of the United States, *Armour & Co.* v. *Virginia*, 246 U. S. 1, 38 Sup. Ct. 267, 62 L. Ed. 547. The Auditor in 1916 also issued his circular of instructions following that decision, which is in this record and reads thus:

"A manufacturer engaged in business in this State, who is taxed upon the capital employed in the business may, without a merchant's license, sell at the place of manufacture, but nowhere else, except by sample, the goods, wares and merchandise manufactured by him and a non-resident manufacturer, establishing a place of manufacture in this State, and taxed by this State on his capital employed in that business, would have the same privilege. If either a non-resident manufacturer or a resident manufacturer desires to sell the goods, wares and merchandise manufactured by him at a definite place or store other than the place of manufacture, then such manufacturer, either resident or non-resident, must, as aforesaid, take out a merchant's license even though this definite place or store be located in the same city or town in which his place of manufacture is established.

When a manufacturer establishes a place or store for the sale of his goods other than at his place of manufacture, the State merchant's license tax required by sections 45 and 46 of the tax laws is graded according to his purchases, and all goods, wares and merchandise manufactured by such merchant and sold, or offered for sale, at a place other than

his place of manufacture shall be considered as purchases. In other words, both the resident and non-resident manufacturer who establishes a store or place of sale other than the place of manufacture is required to take out a State merchant's license and the amount of the State license tax is to be graded not only by the amount of the purchases made by such manufacturer from other manufacturers, but also by the goods, wares and merchandise manufactured by him and sent from the place of manufacture to his store for sale; and he is required to report to the commissioner not only the amount of goods purchased by him from other manufacturers and offered for sale, but also the amount of the goods manufactured by him either within or without this State and offered for sale by him at his store or definite place in this State other than the place of manufacture.

"The Supreme Court of Appeals of Virginia, in the case of *Commonwealth of Virginia* v. *Armour & Co.*, decided on January 13, 1916, that the construction placed by the Auditor of Public Accounts upon the tax law relating to purchases, as set out above, was correct in every particular.

"Therefore, every resident and non-resident manufacturer who, on and after June 19, 1914, maintained in your district a definite place of business, other than the place of manufacture, for the sale of goods, wares and merchandise manufactured by such manufacturer, should be required to make report of purchases, as defined above, and pay the merchant's license tax required by law for the period between June 19, 1914, and May 1, 1916, that such manufacturer was engaged in business as a merchant in your district; and every such manufacturer should, for the license year commencing May 1, 1916, be required to report purchases, as above defined, and pay the license tax required by law of a merchant for the conduct of the business of a merchant at a definite place of business in your district, other than the place of manufacture."

[2] It is observed that the change thus made requires that manufacturers who sell their goods at a place or store, other than the place of manufacture, even though such place be located in the same city or town, were thereafter required to include such goods as a part of their purchases, upon which they were taxed as merchants for the privilege of thus conducting their business, and the merchants' license law expressly provides that there shall be no other tax upon the capital of merchants employed in the mercantile business. In the case of *Commonwealth* v. *Armour & Co., supra,* it is expressly held that this merchant's license tax thus imposed upon manufacturers who thus sell their own products, is a lawful exercise of the taxing power. We are to determine from these statutes whether or not the Craddock-Terry Company has already paid all of the taxes which may be lawfully demanded of it as a manufacturer. This presents a question of fact, and it becomes necessary to ascertain the amount of capital which this company had invested in its manufacturing business during the years referred to.

[3] The company exhibited all of its books and records, and it is from these, as interpreted by the parol evidence introduced, that the issue is to be determined. It seems perfectly clear to us that the legislature has expressly required a manufacturer who is also a merchant, to make an absolute severance of its manufacturing capital from the capital which he uses in his own mercantile business, because it has provided for the two entirely different methods of taxation referred to as to these two clearly distinguishable classes of business. These taxes are to be assessed against one who is engaged in both classes of business just as they would be if there were two entirely independent persons or corporations, one engaged in manufacturing and the other in merchandising. In this case the company exercised its right to transfer from the manufacturing branch to the mercantile branch all of the goods

manufactured by it, charged at the prime cost of manufacture, and thus to diminish the amount which would otherwise be invested in its manufacturing business; or, expressed otherwise, imposed upon its mercantile branch the entire expense of selling and distributing its manufactured goods, thereby relieving the manufacturing branch of this expense. Unless forbidden by statute, expressly or impliedly, this right thus to conduct its business must be conceded, since the act of 1915, hereinbefore referred to, appears to expressly recognize and sanction this precise method, and this method is certainly justified by obvious considerations of convenience and economy.

The view of the company is thus expressed in the testimony of its president, Mr. John W. Craddock: "The law explicitly requires, where one and the same company is operating both as merchants and manufacturers, that they shall be taxed separately. The functions of a manufacturing establishment, when operated in connection with a mercantile establishment to which it furnishes and sells its finished product, are, first, the erection and equipment of the factory which is otherwise assessed, then comes the elements of raw material, labor, overhead charges, goods in process and finished goods, if any are on hand and owned by the factory upon the tax date. On the other hand the mercantile establishment takes these goods from the factory as produced, furnishes the warehouse to store them in, engages and operates the selling force (which, in the case of the company, represents over one hundred salesmen), extends the necessary credits in the sales of its shoes, and performs all other distinctly mercantile operations. Under this method the one department cannot be charged with the elements or factors necessary to the other. On this point it should be borne in mind that if the Craddock-Terry Co. factories were owned by some one else other than the defendant company and manufactured its goods in the same

amount and under the same conditions, and sold them to other wholesale houses who paid for them upon delivery as is done in this case, the amount of capital used and required by the factory would be exactly as that stated in 'Exhibit J. W. C. No. 2' and 'Exhibit J. W. C. No. 7' filed with the answer. This method of doing business between the factories and the mercantile house is not peculiar to Craddock-Terry Co., but is the rule rather than the exception with large shoe manufacturing concerns throughout the country."

[4, 5] Now, as heretofore indicated, we are not authorized to inquire whether this was the best method of taxation, but only to determine whether any taxes which the legislature has imposed have been evaded or omitted by this corporation. It seems to us manifest that only so much of the capital of the company as was in fact devoted to its manufacturing business is required to be thus taxed as capital. The representatives of the Commonwealth are not vested with authority to enforce their view that, as a matter of equity and good conscience, the company ought to have invested in the manufacturing branch of its business more capital than the company found necessary for the conduct of that business, and that this branch of the business should incur the expense of distributing the goods when the company, in the absence of any legal inhibition, determined that it would maintain its original status as a mercantile company and impose the entire expense of sale upon its mercantile branch rather than upon its manufacturing branch. The question as to what was the true amount of capital actually invested in the manufacturing business constantly recurs. It is not necessary, as we view the case, for us to follow the mass of figures exhibited in the record, from which the agents of the Commonwealth undertake to ascertain by comparison and estimate precisely or approximately the amount of expense of the mer-

cantile business which they think should have been properly charged as capital invested in manufacturing, and hence liable to an *ad valorem* tax, and what other proportion thereof was fairly to be considered as chargeable to and therefore invested in the mercantile business, and hence covered by the merchant's license tax. Several ventures into this field of speculation have been made by the witnesses for the Commonwealth and no two of them agree precisely in results. There is, we think, no escape from this uncertainty, because the books of the company were not kept with the view of showing what proportion of the mercantile expense was thus incurred in distributing the goods which they manufactured themselves and what proportion thereof to the goods which they bought from others. Both classes of merchandise were commingled, became a single stock, and such expense was always treated by the company as properly chargeable to the mercantile business as a whole. It is not just to the company to charge it with an attempt to evade taxes, if it has made its taxable returns in the method authorized by law. The corporation does a very large business and has for many years paid large amounts into the State and local treasuries as taxes upon both branches of its business, ascertained by the method which it believed and which we adjudge was authorized by law.

We do not deem it necessary to pursue or to elaborate the question further. If we had determined the contention of the Commonwealth to be correct, it would be necessary to go into the questions discussed in much greater detail, and to refer to the complicated figures and statements showing the magnitude of the business which the record presents; but as we do not agree with this contention, and as in our view of the evidence it sufficiently appears that the company has returned as capital invested in its manufacturing business the full amounts which it had actually thus

invested in the conduct of that branch of the business, we find no difficulty in agreeing with the conclusions of the local board of review and with the learned trial judge. The controversy is not over the facts but over the proper conclusions to be drawn therefrom, and we conclude that there is no error in the decree.

*Affirmed.*