167 U.S. 461 (1897)
MERCHANTS' AND MANUFACTURERS' BANK
v.
PENNSYLVANIA.
No. 801.
Supreme Court of United States.
Argued April 28, 29, 1897.
Decided May 24, 1897.
ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.
*462 Mr. Jeremiah M. Wilson for plaintiff in error. Mr. William A. Hale, Jr., and Mr. John Wilson were on his brief.
Mr. John P. Elkin for defendant in error.
MR. JUSTICE BREWER delivered the opinion of the court.
The validity of this statute is challenged by plaintiff in error on three grounds: The first is, that its operation results in a lack of uniformity of taxation upon the same class of subjects, to wit, shares of national banks within the State; and the argument of counsel is that it conflicts with article 9, section 1 of the constitution of the State of Pennsylvania, which requires that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."
It is sufficient to say in reference to this contention that the decision of the Supreme Court of the State of Pennsylvania sustaining the statute is conclusive in this court, as to any question of conflict between it and the state constitution. West River Bridge Co. v. Dix, 6 How. 507; Bucher v. Cheshire *463 Railroad, 125 U.S. 555; Bell's Gap Railroad v. Pennsylvania, 134 U.S. 232; Lewis v. Monson, 151 U.S. 545; Adams Express Co. v. Ohio, 165 U.S. 194; Long Island Water Supply Co. v. Brooklyn, 166 U.S. 685.
If it be said that a lack of uniformity renders the statute obnoxious to that part of the Fourteenth Amendment to the Federal Constitution which forbids a State to "deny to any person within its jurisdiction the equal protection of the laws," it becomes important to see in what consists the lack of uniformity. It is not in the terms or conditions expressed in the statute, but only in the possible results of its operation. Upon all bank shares, whether state or national, rests the ordinary state tax of four mills. To every bank, state and national, and all alike, is given the privilege of discharging all tax obligations by collecting from its stockholders and paying eight mills on the dollar upon the par value of the stock. If a bank has a large surplus, and its stock is in consequence worth five or six times its par value, naturally it elects to collect and pay the eight mills, and thus in fact it pays at a less rate on the actual value of its property than the bank without a surplus, and whose stock is only worth par. So it is possible, under the operation of this law, that one bank may pay at a less rate upon the actual value of its banking property than another; but the banks which do not make this election, whether state or national, pay no more than the regular tax. The result of the election under the circumstances is simply that those electing pay less. But this lack of uniformity in the result furnishes no ground of complaint under the Federal Constitution. Suppose, for any fair reason affecting only its internal affairs, the State should see fit to wholly exempt certain named corporations from all taxation. Of course the indirect result would be that all other property might have to pay a little larger rate per cent in order to raise the revenue necessary for the carrying on of the state government, but this would not invalidate the tax on other property, or give any right to challenge the law as obnoxious to the provisions of the Federal Constitution.
Again, it will be perceived that this inequality in the burden *464 results from a privilege offered to all, and in order to induce prompt payment of taxes, and payment without litigation. To justify the propriety of such inducement, we need look no further than the present litigation. It is common practice in the States to offer a discount for payment before the specified time, and impose penalties for non-payment at such time. This, of course, results in inequality of burden, but it does not invalidate the tax. The inequality of result comes from the election of certain taxpayers to avail themselves of privileges offered to all. It was well said by Mr. Justice Williams, speaking for the Supreme Court of Pennsylvania, in the opinion in the present case: "The argument is that inequality of burden establishes the unconstitutionality of the law under which the tax is levied. If the validity of our tax laws depends upon their ability to stand successfully this test, there are none of them that can stand." Indeed, this whole argument of a right under the Federal Constitution to challenge a tax law on the ground of inequality in the burdens resulting from the operation of the law is put at rest by the decision in Bell's Gap Railroad v. Pennsylvania, 134 U.S. 232, 237, in which case Mr. Justice Bradley, speaking for the court, said:
"The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them... . We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of *465 the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt." See also Jennings v. Coal Ridge Improvement Co., 147 U.S. 147.
The second ground upon which the statute is challenged is that, as claimed, it conflicts with the legislation of Congress, regulating the taxation of shares of stock in national banks. This legislation is found in § 5219, Rev. Stat., which provides: "That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere." The purpose of this, as often announced in this court, is to prevent any discrimination between national bank capital and other moneyed capital. Aberdeen Bank v. Chehalis County, 166 U.S. 440, and cases cited in opinion. But this section does not forbid discrimination between national banks, but only as between such banks and state banks, or other moneyed capital in the hands of private individuals. The legislation before us treats state banks and national banks alike; gives to each the same privileges; and there is no discrimination against national banks as such.
It is further insisted that the act is really one taxing the bank and not taxing the shares of stock as the property of the stockholders; but this is obviously a misinterpretation of the statute. That simply makes the bank the agent to collect from the stockholders the tax imposed upon the shares. The language of section 7 in this respect is clear, for it provides that the national bank which fails to elect to collect and pay the eight mills shall make a report to the auditor general "setting forth the full number of shares of the capital stock issued by such national bank, and the actual value thereof, *466 whereupon it shall be the duty of the auditor general to assess the same for taxation," and also that after such report is made to the auditor general "it shall be his further duty to hear any stockholder who may desire to be heard on the question of the valuation of the shares as aforesaid; and he shall have the right, by other evidence, to satisfy himself as to the correctness of the valuation of said shares of stock in said report contained, and to correct said valuation. The auditor general shall thereupon transmit to the said national banks a statement of the valuation and assessment so made by him, and the amount of tax due the Commonwealth on all of said shares, which tax the said banks shall, within thirty days after receiving said statement, collect from their shareholders and pay over into the state treasury."
That the State has the right to make the bank its agent to collect the tax from the individual stockholders was settled in National Bank v. Commonwealth, 9 Wall. 353.
It is further urged that there is discrimination because as to those state banks that do not elect to pay the eight mills the auditor general is required to look to the stockholders directly for the regular four mills tax, whereas as to national banks he reaches the stockholders through the bank itself, and hence it is said that some shareholders in state banks may escape taxation. But this is a mere matter of procedure. It is no objection to the law that it makes the national bank the agent to collect and does not compel the state bank to do the same.
A final objection is that there is a lack of due process of law, in that the property of the shareholders is subjected to an ad valorem tax without an opportunity being given to them to be heard as to the value. It is true the statute contemplates no personal notice to the shareholder, but that has never been considered an essential to due process in respect to taxation. The statute defines the time when the bank shall make its report to the auditor general, and it specifically directs him to hear any stockholder who may desire to be heard. The statute, therefore, fixes the time and place, for official proceedings are always, in the absence of express provision to the contrary, *467 to be had at the office of the officer charged with the duties; Andes v. Ely, 158 U.S. 312, 323; and a notice to all property holders of the time and place at which the assessment is to be made is all that "due process" requires in respect to the matter of notice in tax proceedings. As said in Hagar v. Reclamation District No. 108, 111 U.S. 701, 710:
"The law in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law." See also Bell's Gap Railroad v. Pennsylvania, supra; Spencer v. Merchant, 125 U.S. 345; Palmer v. McMahon, 133 U.S. 660, 669; Lent v. Tillson, 140 U.S. 316; Paulsen v. Portland, 149 U.S. 30.
These are the only matters requiring notice. We see no error in the judgment of the Supreme Court of Pennsylvania, and it is
Affirmed.
MR. JUSTICE SHIRAS did not hear the argument or take part in the decision of this case.