# 𝔖taunton

## CASKEY BAKING COMPANY, INC. V. COMMONWEALTH OF VIRGINIA.

September 5, 1940.

Record No. 2300.

Present, All the Justices.

The opinion states the case.

*Martin, Seibert & Beall, R. Gray Williams* and *J. Sloan Kuykendall,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *W. W. Martin, Assistant Attorney-General,* for the Commonwealth.

*John T. Wingo, amicus curiae.*

HUDGINS, J., delivered the opinion of the court.

Caskey Baking Company, Incorporated, was convicted on the charge of peddling without first having secured a license from the Commonwealth as required by section 192b of the Tax Code, Code Supp. 1938, p. 258. To that judgment of conviction this writ of error was allowed.

Plaintiff in error is a West Virginia corporation and domesticated in Virginia. It has no place of business in this State except a statutory office in the office of R. Gray Williams, an attorney, at Winchester. It manufactures bakery products (not injurious to health nor damaging to morals) in West Virginia, and sells these products in Virginia to grocers and other retail dealers. The sales are made by employees of the plaintiff in error from a stock of manufactured goods carried by trucks from place to place. These trucks are operated by it over regular routes in Virginia at regular intervals. Sales and deliveries of the bakery products are made at one and the same time and without having secured previous orders from the customers. In other words, plaintiff in error is in Virginia nothing more nor less than an itinerant peddler of merchandise manufactured by it in West Virginia.

The same arguments made in this court were presented to the trial judge, the Honorable Philip Williams, who, after mature consideration, prepared and filed an opinion that so fully and ably discusses the questions raised that we are content to adopt it as our own. This opinion, in part, is as follows:

"The defense asserted is that the statute, upon which the conviction rests, is unconstitutional because it contravenes the commerce clause (Article 1, Sec. 8, cl. 3) and the equal protection of the law clause (Fourteenth Amendment) of the United States Constitution.

"The defendant admittedly engaged in peddling bakery products in Virginia after transporting them from its bakery in West Virginia.

"This statute imposes 'an annual State license tax on every person, firm and corporation (other than a distributor and/or vendor of motor vehicle fuels and petroleum products, tobacco, or seafood, a producer of agricultural products, or a manufacturer taxable on capital by this State, or a distributor of manufactured goods paying a State license tax on his purchases) who or which shall peddle goods, wares or merchandise by selling and delivering the same at the same time to licensed dealers or retailers at other than a definite place of business operated by the seller.' It provides that it shall not apply 'to wholesale dealers regularly licensed by this State, and who shall at the same time sell and deliver merchandise to retail merchants.' The amount of the tax imposed is $100.00 for each vehicle used in the peddling. It is also provided that this license confers authority to peddle throughout the State as a state license, but that towns and cities may impose license taxes for peddling within their corporate limits. See 192b, the Tax Code of Va. 1938; Acts 1932, ch. 193, p. 376; 1938, ch. 305, p. 439, Code Supp. 1938, p. 258.

"This and related sections of the Tax Code show that vendors who engage in peddling, such as that covered by this section, are thus classified and taxed:

"1. Vendors solely engaged in peddling. These (with certain exceptions) are taxed as provided by this section, and may be also required to pay city and town taxes. (Secs. 192a and 192b, Tax Code of Va. 1938, Code 1936, p. 2458, Code Supp. 1938, p. 258).

"2. Manufacturers taxable on capital by the State. These are exempt from license tax, state, city, town and county, for peddling their manufactured goods, but they are taxed on their capital. (Secs. 188, 192b, 73, Tax Code Va. 1938, Code 1936, pp. 2416, 2451, Code Supp. 1938, p. 258).

"3. Distributors of manufactured goods and wholesale dealers licensed by the state. These are exempt from state license tax for such peddling (192b, Tax Code) but are taxable on their purchases (188, Tax Code) by the state,

and are also subject to city and town license taxes. (188, 192a, Tax Code.)

"4. Distributors and vendors of motor vehicle fuels and petroleum products, tobacco, or seafood, a farmer, a farmer's co-operative association, a producer of agricultural products. These are exempt from this State license tax. (192b, Tax Code.)

"The terms of this statute limit it to domestic commerce —peddling in Virginia; they do not invade the sphere of interstate commerce; they do not discriminate as between the origin of the peddler nor as to where the peddled wares originate. The defendant, a West Virginia corporation, is required to pay a tax for peddling and so is a Virginia corporation; the tax applies to all peddlers, regardless of where they or their goods came from.

"Emphasis should be focused upon the fact that the defendant seeks to engage in domestic commerce within the state, and that it attacks a tax imposed upon that commerce which the state has the right to regulate and to tax. The defendant, it must be remembered, is not affected by this law in its interstate commerce. This statute does not attempt to impose a tax, for instance, upon deliveries made by defendant in Virginia for merchandise it has sold on orders. The defendant wishes to transport its merchandise into the state and peddle it there; each of its trucks then becoming a travelling store in Virginia. That is the business which this statute taxes.

"It has long since been settled that peddling is domestic, not interstate commerce; and that it may be taxed by the state. *Howe Machine Co.* v. *Gage,* 100 U. S. 676, 26 L. Ed. 734; *Emert* v. *Missouri,* 156 U. S. 296 [15 S. Ct. 367], 39 L. Ed. 430; *Wagner* v. *Covington,* 251 U. S. 95 [104, 40 S. Ct. 93, 94], 64 L. Ed. 157 [168].

"In the case last cited above this statement epitomized the decisions on this subject:

" 'We have, then, a state tax upon the business of an itinerant vendor of goods as carried on within the state—a tax applicable alike to all such dealers, irrespective of where

their goods are manufactured, and without discrimination against goods manufactured in other states. It is settled by repeated decisions of this court that a license regulation or tax of this nature, imposed by a state with respect to the making of such sales of goods within its borders, is not to be deemed a regulation of or direct burden upon interstate commerce, although enforced impartially with respect to goods manufactured without as well as within the state, and does not conflict with the "commerce clause." '

"In *Emert* v. *Missouri, supra,* in which the opinion by Mr. Justice Gray reviews this subject, this is said of the peddler: 'The only business or commerce in which he was engaged was internal and domestic; and, so far as it appears, the only goods in which he was dealing had become a part of the mass of property within the state. Both the occupation and the goods, therefore, were subject to the taxing power, and to the police power, of the state.' [156 U. S. 296, 15 S. Ct. 370.]

"It is contended, however, that the exemption in the statute, in favor of manufacturers taxable on capital, has the effect of exempting resident manufacturers and their products from this taxation; and that this is discriminatory as to non-residents and results in a direct burden upon interstate commerce. Cited, is a line of cases holding that state taxation which discriminates against foreign products or persons is violative of the commerce clause. *Webber* v. *Virginia,* 103 U. S. 344, 26 L. Ed. 565; *Welton* v. *Missouri,* 91 U. S. 275, 23 L. Ed. 347; *Morrill* v. *Wisconsin,* 154 U. S. 626, 14 S. Ct. 1206, 23 L. Ed. 1009; *Minnesota* v. *Blasius,* 290 U. S. 1 [54 S. Ct. 34], 78 L. Ed. 131; *Brown* v. *Maryland,* 12 Wheat. 419, 6 L. Ed. 678; *Commonwealth* v. *Myer,* 92 Va. 809, 23 S. E. 915 [31 L. R. A. 379].

"But that line of cases is based upon the holding that the laws in question, either in terms or effect, imposed a direct burden upon interstate commerce. Certainly, in terms, this statute does not do that; nor, in effect, does it appear to do so. Rather, it seems, this case is to be ruled by the principles of *Armour and Co.* v. *Virginia,* 246 U. S.

1, [38 S. Ct. 267], 62 L. Ed. 547, and [*Commonwealth* v. *Armour & Co.*], 118 Va. 242, 87 S. E. 610; *Reymann Brewing Co.* v. *Brister*, 179 U. S. [445], 446 [21 S. Ct. 201], 45 L. Ed. 269; *New York* v. *Roberts*, 171 U. S. 658 [19 S. Ct. 58, 70], 43 L. Ed. 323.

"In *Armour and Co.* v. *Virginia* [246 U. S. 1, 38 S. Ct. 269, 62 L. Ed. 547], the statute exempted from a merchants' license tax, manufacturers taxed on capital by the state, who offered for sale at the place of manufacture goods, wares, and merchandise manufactured by them. Armour and Company, a corporation of New Jersey and qualified to do business in Virginia, had no manufactory in Virginia but did have distributing houses for marketing its merchandise. These were required to pay the merchants' license tax. The constitutionality of the taxing statute was challenged upon the same grounds asserted in the case now before this court. Armour and Company contended that the exemption noted discriminated against the foreign manufacturer because, having no place of manufacture within the state, it could not have advantage of the exemption enjoyed by the domestic manufacturer. The Supreme Court of Appeals of Virginia held that here was no such discrimination and that the statute was constitutional. The opinion cited, on this question, the cases last above referred to, and distinguished *Commonwealth* v. *Myer, supra,* holding it inapplicable.

"Upon appeal to the Supreme Court of the United States, this decision was sustained, and upon the question of discrimination, the opinion, in part, stated that: 'The error of the argument results from confounding the direct burden necessarily arising from a statute which is unconstitutional because it exercises a power concerning interstate commerce not possessed, or because of the unlawful discriminations which its provisions express or by operation necessarily bring about, and the indirect and wholly negligible influence on interstate commerce, even if in some respects detrimental, arising from a statute which there was power to enact, and in which there was an absence of all

discrimination, whether express or implied, as the result of the necessary operation and effect of its provisions. The distinction between the two has been enforced from the beginning as vital to the perpetuation of our constitutional system. Indeed, as correctly pointed out by the court below, that principle as applied in adjudged cases is here directly applicable and authoritatively controlling.'

"The opinion cited *New York* v. *Roberts* and *Reymann Brewing Co.* v. *Brister, supra,* and then concluded: 'In saying this we have not overlooked or failed to consider the many cases cited in the argument at bar on the theory that they are to the contrary, when in fact they all rest upon the conclusion that a direct burden on interstate commerce arose from statutes inherently void for want of power, or, if within the power possessed, were intrinsically repugnant to the commerce clause because of discriminations against interstate commerce which they contained.'

"In further comment upon the assertion that the statute discriminated against the foreign manufacturer, the opinion stated: 'It follows, therefore, that if the asserted disadvantage be real, and not imaginary, it would be one not direct, because not arising from the operation and effect of the statute, but indirect, as a mere consequence of the situation of the persons and property affected and of the nondiscriminating exercise by the state of power which it had a right to exert without violating the constitution, which is indeed but to say that the disadvantage relied upon, if any, is but the indirect result of our dual system of government.'

"The case of *New York* v. *Roberts, supra,* involved the asserted unconstitutionality, upon the ground of illegal discrimination between domestic and foreign corporations, of a tax statute of the state of New York which imposed a tax on the amount of capital, employed within the state, by corporations doing business therein, and containing an exemption from the tax in favor of corporations wholly engaged in manufacturing within the state. The challenge to this statute was made by a corporation of the state of Michi-

gan, which had qualified to do business in New York. It manufactured its products outside of that state and sent them into it for sale in the original packages at its warehouse there.

" 'It is true,' said the court, 'Manufacturing or mining corporations wholly engaged in carrying on manufacture or mining ores within the state of New York are excepted from this tax; but such exemption is not restricted to New York but includes corporations of other states as well, when wholly engaged in manufacturing within the state'—'It is said that the operation of that portion of this taxing law, which exempts from a business tax corporations which are wholly engaged in manufacturing within the state of New York, is to encourage manufacturing corporations which seek to do business in that state to bring their plants into New York. Such may be the tendency of the legislation, but so long as the privilege is not restricted to New York corporations, it is not perceived that thereby any ground is afforded to justify the intervention of the Federal courts.'

"In *Reymann Brewing Co.* v. *Brister, supra,* a tax statute of Ohio was contended to be unconstitutional upon the same grounds asserted in the case now before this court, because it discriminated in favor of manufacturers in Ohio as against those with plants located outside that state. There was in the statute an exemption from the tax in favor of the manufacturer who sold at the manufactory, and this was asserted to be discriminatory. *New York* v. *Roberts* was cited in holding that this contention was not sound and that the statute was valid.

"It has been concluded, therefore, that the exemptions, in the statute here discussed, are not such discriminations as to render the statute violative of the commerce clause. Neither does it seem that denial of the equal protection of the law is to be found in the exemptions provided for by this statute. These exemptions form but a part of a correlated system of tax classification, as before stated; and they must be so considered in testing them. Is there not a reasonable basis for placing in separate classes the manu-

facturer, the distributor and wholesaler, and the itinerant vendor or peddler? Is hostile discrimination apparent because the manufacturer, who is taxable upon his basic capital, is not also taxed by a license tax for sending his products out through the state for sale and delivery? Must he be taxed, also, for this incidental operation, notwithstanding he is taxed basically in another form, just because a peddler, who is not taxable as a manufacturer, must pay a license tax for peddling? Must a wholesale dealer or distributor, taxable on purchases, be required to pay an additional license tax for selling and delivering this taxed merchandise, in order to conform with the tax required of the peddler, who is not taxed on his purchases?

"It is to be noted that the defendant is neither a manufacturer, a wholesale dealer, nor a distributor, in Virginia; and that it therefore cannot be taxed as such. But there is nothing in the tax laws of Virginia to prevent it from becoming one of these, in which event it would be entitled to the exemptions applicable because it would be taxed in another form. Defendant is subject to the peddlers tax, because it apparently prefers to remain outside these classes; remaining outside it would not be taxed at all unless by the license tax imposed.

"In the three cases, last above referred to, it was contended, upon reasoning like that here applied by defendant, that the exemptions from taxation were discriminatory and in denial of the equal protection of the law. But the contention was not sustained. The principles applied in those cases, in reaching that decision, are applicable here, and with the same result.

"Inequalities or exemptions in state taxation are not forbidden by the equal protection clause of the Fourteenth Amendment. That clause does not limit the power of the state to make any reasonable classification of property, occupations, persons or corporations, for purposes of taxation. It merely forbids inequality caused by clearly arbitrary action, particularly such as is attributable to hostile discrimination against particular persons or classes.

■ *"F. S. Royster Guano Co.* v. *Commonwealth of Va.,* 253 U. S. 412 [40 S. Ct. 560], 64 L. Ed. 989; *Beers* v. *Glynn,* 211 U. S. 477 [29 S. Ct. 186], 53 L. Ed. 290; *Merchants' & M. Nat. Bank* v. *Pennsylvania,* 167 U. S. 461 [17 S. Ct. 829], 42 L. Ed. 236; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232 [10 S. Ct. 533], 33 L. Ed. 892; *Virginia Electric & Power Co.* v. *Commonwealth,* 169 Va. 688, 194 S. E. 775; *Farmers' & Mechanics' Benev. Fire Ins. Ass'n of Roanoke and Botetourt Counties* v. *Horton,* 157 Va. 114, 160 S. E. 315; *Leonard* v. *Maxwell* [216 N. C. 89], 3 S. E. (2d) 316. Nor does this clause forbid exemption or classification based upon a principle of equalization of the tax load, whereby a class is exempted from an additional tax because it is taxed in another way. *In re Richmond Linen Supply Co.,* 291 U. S. 641 [54 S. Ct. 437], 78 L. Ed. 1039; *Virginia Electric & Power Co.* v. *Commonwealth,* 169 Va. 688, 194 S. E. 775; *Richmond Linen Supply Co.* v. *Lynchburg,* 160 Va. 644, 169 S. E. 554.

■ "The exemptions grouped as class 4 in the summary of this tax classification, stated in the beginning of this discussion, need not be discussed. The defendant is not affected by these exemptions. They are, however, sustainable. *Virginia Electric & Power Co.* v. *Commonwealth, supra; Carpel* v. *Richmond,* 162 Va. 833 [175 S. E. 316]; *Leonard* v. *Maxwell, supra.*

" * * *. For the reasons which have been indicated, it has been concluded that section 192b of the Tax Code of Virginia is a valid enactment. Since the defendant admits that it has violated that section, it is therefore guilty as charged in the warrant, and it shall be so adjudged."

Mr. John T. Wingo, an attorney of Richmond, Virginia, by leave of court filed a brief as *amicus curiae.* The only point advanced in his brief that is not covered by the foregoing opinion is that section 192b of the Tax Code discriminates against plaintiff in error and others similarly situated, in that they are subject to a local license tax in each municipality for peddling to retailers while manufac-

turers and distributors who are otherwise taxed are exempt from the imposition of a local license.

The Attorney General, in dealing with this phase of the case, said: "It will be time enough to pass on the validity of a local license when such a license is challenged. Even if a local license were imposed and held to be invalid, such a holding would not necessarily have any bearing on the validity of the State license. It will be remembered that one of the reasons for exempting a manufacturer taxable on capital from the State license is that such manufacturer pays other *State* taxes, but this may not be a reason for exemption from *local* licenses.

"Furthermore, section 192b *does not levy any* local license; it simply says that 'nothing herein contained shall prevent' the localities from imposing licenses. Indeed, it is questionable whether appellant is subject to local licenses. Section 192a of the Tax Code authorizes the imposition of local licenses on peddling to retailers. The section expressly excepts from the liability, however, 'a producer or manufacturer', whether within or without the State, and does not contain the condition 'taxable on capital by this State'. Appellant is both a producer and manufacturer and comes within the exception."

The judgment of the trial court is

*Affirmed.*