Central-Penn National Bank, Appellant, *v.*
Firestone Tire and Rubber Company.

Argued November 17, 1943.   Before KELLER, P. J.,
BALDRIGE, STADTFELD, HIRT, KENWORTHEY and RENO,
JJ.   (RHODES, J. absent).

*Ira Jewell Williams,* with him *Charles M. Willits,* for appellant.

*Joseph W. Henderson,* with him *George M. Brodhead, Jr.,* and *Rawle & Henderson,* for appellee.

OPINION BY BALDRIGE, J., January 27, 1944:

The plaintiff, Central-Penn National Bank of Philadelphia, owner in 1938 and 1939 of 50 and 46 respectively of defendant's debenture bonds, each in the sum of $1,000, brought suit to recover capital stock taxes paid the State Treasurer in the sums of $225 and $230 with interest.

Section 11 of the defendant's agreement, under the terms of which the bonds were issued, provided as follows: "The Company will reimburse to the respective owners of Debentures *any taxes,* other than estate, succession, income or inheritance taxes (but specifically including, without limiting the generality of the foregoing, *any personal property tax or capital stock tax),* which may be lawfully assessed under any present or future law of the Commonwealth of Pennsylvania *upon or with respect to such debentures or upon such owners by reason of the ownership of such Debentures and paid by such owners, not in excess, however, in any year, of five mills upon each dollar of the taxed value of such Debentures."* (Italics supplied.)

The Act of July 15, 1897, P. L. 292, §1, as amended by the Acts of April 8, 1937, P. L. 254, and May 4, 1939,

P. L. 53, 72 PS §1931, et seq., provides inter alia that every bank shall file a report annually with the Department of Revenue setting forth the number of shares of capital stock and the actual value thereof, to be ascertained by adding together the amount of capital stock paid in, surplus, and undivided profits, and dividing this amount by the number of shares, and this value shall be assessed at the rate of eight mills for each dollars of value. In fixing the value the debentures were included. The act provides also, 72 PS §1951: "It shall be the duty of every bank or savings institution, within a period of sixty days after the date of such settlement by the Department of Revenue, to collect the amount of said tax from its *shareholders* and pay the same to the State Treasurer, through the Department of Revenue." (Italics supplied). Amendment of May 31, 1933, P. L. 1130, §1. When a payment is so made by the bank it obtains a stated exemption from local taxation. The bank voluntarily paid the State Treasurer the amount of taxes assessed in the sum of $411.48 for 1939 and $389.16 for 1940.

The foregoing facts were alleged in the plaintiff's amended statement of claim, to which the defendant filed a demurrer. The court below sustained the demurrer holding that the tax in question was not lawfully assessed against the bank. This appeal followed.

The question presented to us is one of law, namely, are the taxes paid by the plaintiff within the defendant's covenant to reimburse the plaintiff as owners of the debentures to the extent of five mills upon each dollar of the tax value of the debentures? In construing this contract, as in every other contract, it is our duty to ascertain, if possible, the intention of the parties as gathered from the language used, taking into account the attending circumstances: *Kaufmann's Estate,* 137 Pa. Superior Ct. 88, 92, 8 A. 2d 472; *Slonaker v. P. G. Pub. Co.,* 338 Pa. 292, 13 A. 2d 48.

It will be noted that the statute of 1897, supra, as amended, does not provide for an assessment against the bank. It provides the bank shall collect the amount of "said tax from its shareholders and pay the same to the State Treasurer." It may be to the advantage of a bank to pay the tax in the first instance to get the benefits of the exemption allowed.

The exact nature of this and other taxes similarly imposed and collected has received judicial consideration. *Merchants' & Manufacturers' Natl. Bank v. Penna.*, 167 U. S. 461, 17 S. Ct. 829, 42 L. Ed. 236, involved the Pennsylvania Act of 1891 imposing a tax on shares of national banks under procedure practically identical with the Act of 1897 in question. The bank contended that the tax on the stock was a tax on the corporation and as such was open to constitutional objection. The court held that the act was not unconstitutional as taxing the bank itself, and that the tax was levied on shareholders, stating p. 465: "It is further insisted that the act is really one taxing the bank, and not taxing the shares of stock as the property of the stockholders; but this is obviously a misinterpretation of the statute. That simply makes the bank the agent to collect from the stockholders the tax imposed upon the shares ...... That the state has the right to make the bank its agent to collect the tax from individual stockholders was settled in *First Nat. Bank v. Kentucky*, 76 U. S. 9 Wall 353."

In *Schuylkill Trust Co. v. Commonwealth of Pennsylvania*, 302 U. S. 506, 512, 58 S. Ct. 295, 82 L. Ed. 392, the court dismissed certain objections made on constitutional grounds to the Pennsylvania Act of 1907, June 13, P. L. 640 as amended taxing the shares of trust companies in the same manner as the Act of 1897 here in question. The commonwealth there argued that the tax is upon the shares as such and not upon the capital, surplus, and

profits of the company. The court stated, pp. 512, 513: "As the case is now presented, we find it necessary to determine whether the tax is upon the shares as such, or upon the capital, surplus and profits of the company. The statute on its face lays the tax upon the property of the stockholder, represented by the shares he owns. The state courts, and the local federal court, have held the imposition a tax upon the shares. (Citing cases in note 8). The history of legislation respecting taxation of banks and trust companies in Pennsylvania leads to the same conclusion. (Citing various Acts of Assembly under note 9.) We are of the opinion that the tax is one upon the shares as such and not upon the assets of the company."

Undoubtedly, the ultimate liability for the tax is upon the shareholders of the bank stock. The statute expressly so states. As Mr. Justice CARDOZZO, who dissented in part to the opinion of the majority of the court in *Schuylkill Trust Co. v. Com. of Penna.*, 296 U. S. 113, 56 S. Ct. 31, 80 L. Ed. 91, said p. 124: "It [the tax] is laid upon the shares, payment being made in the first instance by the corporation as the agent of the shareholders with a remedy over for moneys so advanced. (Citing numerous cases.)"

The appellant earnestly argues that the words of the agreement "any taxes ...... lawfully assessed ...... upon or with respect to such debentures" includes the tax in question, but, as above observed, the tax is not assessed upon the debentures but upon the shares of the bank stock in the hands of the shareholders. These debentures of course are not the shares of bank stock. They are quite distinct therefrom, especially for the purpose of taxation and form but a portion of the assets, to wit, capital, surplus and undivided profits of the bank. Taxes of the nature here involved have been on our statute books for years. It is reasonable to assume that the parties to this agreement had knowl-

edge of that fact. If it was their intention that the taxes in question were to be included in the covenant it should have been specifically so stated. We cannot create a new covenant or change the one made between the parties under the guise of interpretation: *Topkis et ux. v. Rosenzweig et al.*, 333 Pa. 529, 5 A. 2d 100; *Hagarty v. Wm. Akers, Jr. Co., Inc. et al.*, 342 Pa. 236, 20 A. 2d 317.

The judgment of the court below is affirmed.