## Richmond

THOMPSON'S DAIRY, INCORPORATED v. THE COUNTY BOARD OF ARLINGTON.

January 16, 1956.

Record No. 4452.

Present, All the Justices.

The opinion states the case.

*Green, Trueax & Smoot,* for the plaintiff in error.

*William J. Hassan* and *David L. Carpenter,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Thompson's Dairy, Incorporated, filed in the court below its petition against the County Board of Arlington praying for a declaratory judgment adjudicating that certain license taxes assessed against it by the County Board under sections 50 and 51 of the Business Privilege License Ordinance for the years 1952, 1953 and 1954, and paid under protest, were invalid and should be refunded. After hearing the evidence ore tenus the lower court entered an order denying the prayer of the petition, and to review that order the present writ was allowed.

Thompson's Dairy is a District of Columbia corporation with its plant located in the District where it processes its dairy products, consisting of milk, cream, cottage cheese, etc. It has no plant or place of business in Virginia. It loads on trucks at its plant the products processed or produced by it, along with other commodities such as butter, eggs and margarine which it does not produce but purchases from others, and transports them from its plant in the District into Arlington county where it delivers them to numerous customers. These deliveries are to both retail and wholesale customers.

Retail deliveries are mainly to regular customers whose orders have been previously taken. But in addition to what is necessary to fill the orders of such regular customers, the trucks carry products or commodities which are offered for sale and sold directly both to its regular customers and to others along the deliverymen's routes in the county.

Wholesale deliveries are to restaurants, grocery stores, drugstores and schools in the county. Here, too, the products or commodities are loaded on trucks at the dairy plant in the District, carried into Arlington county, and delivered to regular customers. From his truck each deliveryman supplies to a customer such products and commodities as the customer may need at that particular time.

The County Board assessed appellant with a retail and wholesale peddler's tax, under sections 50 and 51 of the ordinance, for each truck used during the years 1952, 1953 and 1954 in its retail and wholesale deliveries, respectively, in the county. The pertinent portions of the sections are copied in the margin.[1]

---

[1] Section 50. "PEDDLERS: Any person who shall carry from place to place any goods, wares or merchandise, and offer to sell or barter the same, or actually sell or barter the same, shall be deemed to be a peddler, and any person licensed as a peddler may sell any personal property a merchant may sell, or he may exchange the same for other articles.

"All persons who do not keep a regular place of business (whether it be a house

Clearly the activities of the dairy company, in selling its products from its trucks to purchasers in the county, fall within the definitions

or a vacant lot, or elsewhere) open at all times in regular business hours and at the same place, who shall offer for sale goods, wares and merchandise, shall be deemed peddlers under this section.

"This section shall not apply to those who sell or offer for sale in person or by their employees, ice, wood, meats, milk, butter, eggs, poultry, fish, oysters, game, vegetables, fruits, or other family supplies of a perishable nature grown or produced by them and not purchased by them for sale.

"For the privilege of peddling or bartering in this county, there shall be paid two hundred and fifty dollars for each person so engaged when he travels on foot, and when he peddles otherwise than on foot the tax paid shall be five hundred dollars, except that the tax on peddlers of ice, wood, or coal, not produced by them, but purchased for resale, shall be twenty-five dollars for each vehicle used in such peddling; except that the tax on peddlers of lemonade or like beverages, ice cream, nuts, popcorn, meat, milk, butter, eggs, poultry, fish, oysters, game, vegetables, fruits, or other family supplies of a perishable nature not grown or produced by them shall be $37.50 for each vehicle used in peddling; * * * .

\* \* \* \* \* \* \*

"Nothing in this section shall be construed to require of any farmer a peddler's license for the privilege of selling or peddling farm products, wood, or charcoal grown or produced by him. * * *"

Section 51. "PEDDLERS OF GOODS, WARES OR MERCHANDISE WHO SELL TO LICENSED DEALERS OR RETAILERS:—There is hereby imposed an annual license tax on every person, firm or corporation (other than a distributor and/ or vendor of motor vehicle fuels and petroleum products, or seafood, a farmer, a dealer in forest products, a producer of agricultural products or a manufacturer taxable on capital by this State) who or which shall peddle goods, wares or merchandise by selling and delivering the same at the same time to licensed dealers or retailers at other than a definite place of business operated by the seller.

"Provided, however, that the foregoing exemption of a manufacturer, taxable on capital by the State shall be construed as restricted to a manufacturer taxable on capital by this State who peddles the goods, wares or merchandise manufactured by him at a plant the capital of which is taxable by this State, and who peddles no other goods, wares or merchandise.

"Provided further, that this section shall not become construed to apply to wholesale dealers regularly licensed by this county, and who shall at the same time sell and deliver merchandise to retail merchants.

"The annual license tax hereby imposed, as aforesaid, on every such person, firm or corporation, peddling as aforesaid, is in the sum of $100 for each vehicle used in such business, and the said license shall not be issued quarterly, nor shall it be transferable, nor shall the tax be subject to proration.

\* \* \* \* \* \* \*

"A peddler, within the meaning of this act, is any person, firm or corporation who or which, at other than a definite place of business operated by the seller, shall sell, or offer to sell, goods, wares or merchandise to licensed dealers or retailers, and at the time of such sale or exposure for sale, shall deliver, or offer to deliver, the goods, wares or merchandise to the buyer, and any delivery made on the day of sale shall be construed as equivalent to delivery at the time of sale. * * * "

of retail and wholesale peddling in sections 50 and 51, respectively, of the ordinance.

■ The appellant contends that as applied to it the ordinance is invalid for two reasons: First, it says, the ordinance imposes a tax on its activities in delivering and selling its commodities in Arlington county; that such activities constitute interstate commerce and may not be thus taxed. Second, it says, in its operation and effect the ordinance unlawfully discriminates against appellant's activities in interstate commerce and denies to it the equal protection of the laws guaranteed by the Fourteenth Amendment.

Little need be said of appellant's first contention. It is true that the transportation of its products and commodities across the State line to fill orders previously taken is interstate commerce which the county may not lawfully tax under Article I, § 8, of the Federal Constitution. *Nippert* v. *City of Richmond*, 327 U.S. 416, 66 S. Ct. 586, 90 L. ed. 760, 162 A. L. R. 844, and cases there cited. But that is not the activity which is taxed under the provisions of the ordinance. As applied to appellant, the ordinance levies taxes on it for the privilege of selling or peddling its products from its trucks in Arlington county. Such sales are purely local in character. They are consummated in the county after the commodities have been brought there. It has long been settled by the decisions of the Supreme Court that such a statute imposes no forbidden burden on interstate commerce. *Caskey Baking Co.* v. *Commonwealth of Virginia*, 313 U. S. 117, 119, 61 S. Ct. 881, 85 L. ed. 1223, and cases there cited. The fact that a part of appellant's activities is interstate commerce which may not be taxed locally does not mean that its purely local activities may not be taxed locally.

■ With respect to its second contention, the appellant's argument seems to be that the ordinance discriminates against its business in interstate commerce and denies to it the equal protection of the laws because, it says, according to the testimony of the commissioner of revenue for the county, "resident dairies were not assessed with" such tax, while appellant, "a nonresident dairy, was assessed with the tax."

But the commissioner further testified that local or resident dairies are not taxable under the ordinance because they are assessable with a "State capital tax." An examination of the pertinent State statutes will clarify his testimony and show that the liability of a dairy for a local peddler's tax on the one hand and exemption therefrom on

the other are not based upon whether it is a resident or a nonresident, but upon well-defined classifications of the subjects of taxation.

Code, § 58-416, provides that, "That part of the dairy business which consists of the purchase, pasteurization and sale of milk and cream and the production and sale of buttermilk, as well as that part of the dairy business which consists of the manufacture of butter, condensed milk, evaporated milk, ice cream mix, ice cream, milk powder and cheese," is taxable on the capital employed in business in this State.

Under Code, § 58-414, the capital of a nonresident "doing business in this State" is taxable "in the same manner and to the same extent" as if he were a resident.

It will be observed that under these statutes all dairies, whether resident or nonresident, are taxable on their capital employed in business in this State. Such dairies whether they be resident or nonresident, are exempt from the payment of State retail and wholesale peddler's licenses. Code, §§ 58-340, 58-346 (as amended by Acts 1950, ch. 458, p. 893; Id., ch. 519, p. 1015). Both alike are exempt from the payment of local peddler's licenses. Code, §§ 58-344, 58-354 (as amended by Acts 1950, ch. 458, p. 893), and 58-266.2 (as amended by Acts 1950, ch. 119, p. 155).

Thus both resident and nonresident dairies are treated exactly alike. Generally speaking, if a dairy, whether a resident or nonresident, has a place of business in this State it is taxable on its capital employed in the State and may peddle its products without liability for peddler's taxes. On the other hand, if a dairy, whether it be resident or nonresident, employs no capital in this State it is not exempt under these statutes from the payment of a peddler's tax for the privilege of selling its products throughout the State.

When we examine the local ordinance in question we find that each section is couched in general language and applies to residents as well as nonresidents who fall within its terms, whether the peddled commodities are purchased in or out of the State. Under section 50, if a peddler, whether he be a resident or nonresident, has no regular place of business in the State and desires to peddle milk, butter and eggs which he has not produced but has purchased for sale either in or out of the State, he is liable for a retail peddler's license tax. On the other hand, if the seller, whether he be a resident or nonresident, has a regular place of business in this State, or produces such products, he is exempt from such retail peddler's tax.

Under section 51, if a peddler, resident or nonresident, is a manufacturer[2] and taxable by the State on his capital, he may peddle the commodities manufactured at his plant in this State to licensed dealers or retailers without paying a wholesale peddler's tax. On the other hand, if a peddler, resident or nonresident, does not fall within this class, he is subject to a wholesale peddler's tax whether the commodities he sells be purchased in or out of the State.

Hence, under our statutes and the terms of the local ordinance, appellant's liability for peddler's taxes on its activities in Arlington county is not based upon the fact that it is a nonresident dairy, or that its products have been brought into this State from the District. It is based upon the fact that it does not fall within a class of dairies which has a place of business in the State, is otherwise taxed and is exempt from the payment of this particular tax.

Thus it is clear that the ordinance does not discriminate against products brought into this State in interstate commerce.

*Caskey Baking Co.* v. *Commonwealth*, 176 Va. 170, 10 S.E. (2d) 535, involved a similar situation. There the appellant was a West Virginia corporation domesticated in Virginia but having no place of business in the State other than a statutory office. It manufactured its products at its plant in West Virginia, brought them into Virginia in trucks, and sold them to its customers along regular routes. It was convicted of peddling without a State license, contrary to the provisions of section 192-b of the Tax Code (Code 1950, §§ 58-346-58-353), and appealed to this court. It claimed that the statute was invalid on the ground that it contravened the Commerce Clause of the Federal Constitution and the Equal Protection of the Laws Clause of the Fourteenth Amendment. This contention was based upon the exemptions in the statute in favor of manufacturers taxable on capital by the State, distributors of manufactured goods, and wholesale dealers regularly licensed by the State.

We held this contention to be unsound, pointing out that both liability for and exemption from the tax were based upon well-defined classifications of the subjects of taxation; that the statute was free of discrimination against nonresidents and their products because "all peddlers, regardless of where they or their goods came from," were liable for the tax. (176 Va., at page 174, 10 S. E. (2d), at page 537).

Upon substantially the same reasoning the Supreme Court of the United States affirmed the judgment of this court. (313 U. S. 117,

---

[2] Under Code, § 58-416, *supra*, dairies are classified and taxed as manufacturers.

61 S. Ct. 881, 85 L. ed. 1223.) The concluding language of its opinion aptly applies to the situation now before us:

" * * * As we have repeatedly held, the equal protection clause of the Fourteenth Amendment does not prevent a state from classifying businesses for taxation or impose any iron rule of equality. (Citing *State Board of Tax Commissioners of Indiana* v. *Jackson*, 283 U. S. 527, 537, 51 S. Ct. 540, 543, 75 L. ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536, and cases cited.) Some occupations may be taxed though others are not. Some may be taxed at one rate, others at a different rate. Classification is not discrimination. It is enough that those in the same class are treated with equality. That is true here." (313 U. S., at page 121, 61 S. Ct., at page 883.)

The principles laid down in the *Caskey Baking Company* case are determinative of the present case. It is quite beside the point that that case involved a State statute while the present case involves a county ordinance. The essential thing is that the ordinance here complained of, like the State statute there complained of, imposes no undue burden on nor discriminates against interstate commerce, nor does it deny the equal protection of the laws to the appellant. The ordinance operates equally on all who come within its terms, whether they be residents or nonresidents, or whether the commodities sold or offered for sale be produced in this State or elsewhere.

In our opinion the judgment is plainly right and accordingly it is

*Affirmed.*