# Commonwealth v. The Second National Bank of Meyersdale

*Herman M. Buck, Ray, Buck & John,* for appellant.

*Edward T. Baker,* Deputy Attorney, for Commonwealth.

LIPSITT, J., June 21, 1967.—This matter is before the court on an appeal by The Second National Bank of Meyersdale from an order of the Board of Finance and Revenue. The facts which have been stipulated may be summarized.

The said bank sold its assets to Gallatin National Bank of Uniontown, Pa., under an agreement approved by the Comptroller of the Currency on August 6, 1962. On August 10, 1962, its Board of Directors adopted a resolution declaring a total liquidation dividend of the proceeds realized from the sale payable to the stockholders then of record in two installments, to wit: 50 percent payable after September 4, 1962, and the remaining 50 percent payable after January 7, 1963. Appellant ceased its operations as a bank as of the close of business on August 25, 1962. Pursuant to a notice dated August 28, 1962, addressed to all its shareholders, distribution was made on or about September 4, 1962, of the first liquidation dividend in the amount of $255 per share, upon tender of the stock certificate. Such distribution was noted by appellant on the stock certificate at the time of payment and the certificate returned to the shareholder. By reason of the liquidation dividend, the sum of $318,750 was paid to the shareholders in 1962. Consequently, the remaining balance payable in liquidation amounting to $344,-250 was distributed shortly after January 7, 1963, thereby concluding the distribution of all of the assets.

Each shareholder received in liquidation the sum of $510 per share, one half of which was paid on or about

September 4, 1962, and the other one half on or about January 7, 1963, upon tender and surrender of the stock certificate.

A tax of $2,713.20 was paid on the basis of the bank shares tax report for the year 1963 which resulted from the imposition of the applicable tax rate to the value of shares as of January 1, 1963.[1]

Appellant filed a petition with the Resettlement Board of the Department of Revenue contending that, as a result of the dividend declaration of August 10, 1962, the amount of the unpaid dividends of $344,250 should have been deducted from the value of its shares, thereby resulting in no tax due for the period in question, that is, no tax due as of January 1, 1963. Relief was denied by the Resettlement Board and by the Board of Finance and Revenue on a petition for review.

The statute involved in the instant appeal is the Act of July 15, 1897, P. L. 292, as amended, 72 PS §1931, which is commonly referred to as the "Bank Shares Tax Act". In its pertinent part, the act provides:

"Every bank or savings institution having capital stock, incorporated by or under any law of this Commonwealth or under any law of the United States, and located within this Commonwealth, shall, . . . For the calendar year beginning the first day of January, one thousand nine hundred sixty-one, and each year thereafter, such bank or savings institution having capital stock shall, on or before the fifteenth day of April of the year one thousand nine hundred sixty-one, and of every year thereafter, make to the Department of Revenue a report, in writing, verified as required

---

[1] The tax figure is slightly less than the value shown for the shares representing the final liquidation dividend, because a small number of the shares were exempt.

by law, setting forth the full number of shares of the capital stock subscribed for or issued, as of the preceding first day of January, by such bank or savings institution having capital stock, and the actual value thereof as of the preceding first day of January, which actual value shall be ascertained as hereinafter provided. It shall be the duty of the Department of Revenue to assess such shares for taxation . . . at the rate of eight mills upon each dollar of the actual value thereof, the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus, and undivided profits, and dividing this amount by the number of shares. It shall be the duty of every bank or savings institution having capital stock, at the time of making every report required by this section, to compute the tax and to pay the amount of said tax to the State Treasurer, through the Department of Revenue either from its general fund, or from the amount of said tax collected from its shareholders. . . ."

Paraphrasing the above-quoted portions of the statute, appellant, as a national bank, would be liable to remit the tax based on the value of its shares in the hands of its shareholders as of January 1, 1963, less certain shares exempted by statute, at the rate of eight mills.

Appellant, in its appeal and specification of objections, states that its capital stock had no value as of January 1, 1963, and, secondly, it is not subject to any bank shares tax for the reason that it has sold all its assets and has declared a liquidation dividend covering all its remaining capital, surplus and unpaid dividend profits. It is the Commonwealth's position that under the terms of the statute, appellant was liable for the remission of the tax and that its shares did have a value as of January 1, 1963, which is ascertainable.

Perhaps the crux of the difficulty here arises because appellant conceives of the bank shares tax as being imposed upon the financial institution. It presents a number of legal authorities to the effect that upon dissolution of a corporation the title to corporate property passes from a corporation and becomes vested in the stockholders among whom it is to be distributed. Little purpose would be served to analyze these opinions and cases as the premise on which the argument is based appears to be incorrect. It is true that appellant ceased normal banking operations in August of 1962 and was not engaged in active banking business as of January 1, 1963; however, the statute is not predicated upon an active going financial business, but rather on the value of the outstanding shares of stock held by the stockholders. The statute stipulates that the value of the shares is to be ascertained by adding together the amount of capital stock paid in, the surplus and undivided profits. The funds in the hands of the bank as of January 1, 1963, could either qualify as capital stock paid in or as undivided profits. Simply because these assets were to be distributed as a liquidation dividend did not make the shares valueless nor did it absolve appellant from the payment of the tax.

In a case interpreting a predecessor statute, the Act of June 8, 1891, P. L. 229, which statute contained similar language as here presented, the nature of the tax was noted. In Merchants' and Manufacturers' Bank v. Pennsylvania, 167 U. S. 461 (1897), the United States Supreme Court notes, at page 465:

"It is further insisted that the act is really one taxing the bank and not taxing the shares of stock as the property of the stockholders; but this is obviously a misinterpretation of the statute. That simply makes the bank the agent to collect from the stockholders the tax imposed upon the shares".

This conclusion that the tax was imposed on the shares in the hands of the shareholders has been carried forward through the present statute and is inherent in the Bank Shares Tax Act. In describing the Bank Shares Tax, in the tenth edition of State Taxation of Corporations in Pennsylvaina by Mahon, Graichen & Habermehl, it is stated, at page 78:

"This tax at the rate of 8 mills is technically levied upon the actual value of the shares of banks, title insurance and trust companies in the hands of their holders. As a practical matter the reports are filed and the tax is paid by such institutions in their own right".

Thus, it must be held that the statute does not impose tax on a going financial institution but upon the value of the shares of said institution in the hands of the shareholders. The stipulation of facts in the instant case states that the value of the shares in the hands of the shareholders of appellant as of January 1, 1963, was $344,250. After eliminating certain exempt shares, tax was properly imposed on the balance.

Appellant argues further that even if the bank shares tax for 1963 would be due, such a tax should be apportioned on the basis of the final liquidation payment made in January 1963. Thus, the proposition is urged that the tax is apportionable for the period from January 1, 1963, until on or about January 7, 1963. Appellant has advanced as an analogy the situation where the capital stock tax is levied. Here again, there is a misconception as to the nature of the tax. The statute involved here, as quoted above, imposes a tax based on the value of shares *as of* a certain specified date. The date specified by statute is January 1, 1963. The act imposes what is termed a "spot tax" which requires the taxpayer to ascertain the value of its shares of stock as of a specified date. Such an imposition clause

may be contrasted with the Capital Stock or Franchise Tax Act of June 1, 1889, P. L. 420, as amended, 72 PS §1871, which imposed tax for a fixed period, being a calendar year or a fiscal year. In the latter case, if a taxpayer is subject to tax for a portion of a period, its tax must be prorated in order to conform to the statute. However, in the instant case, appellant is liable under the statutory provision regardless of the period of time involved. Since the shares of stock in the hands of the shareholders had value as of January 1, 1963, appellant became liable for the transmission of the tax and no proration is required or allowed by statute.

Therefore, applying the statutory directives that the tax in question is (1) to be applied to the shares of stock in the hands of the shareholders and (2) imposed as of a certain specified date, appellant is liable under the facts of the instant case for the transmittance of the tax.

It may parenthetically be noted that the issue of apportionment was not raised before the taxing authorities nor in the specification of objections. Thus, consideration of this argument is barred by the mandatory provisions of section 1104 of The Fiscal Code, 72 PS §1104, which prohibits issues being raised which were not raised before the taxing authorities and included in the specification of objections: Commonwealth v. Lukens Steel Company, 74 Dauph. 26 (1959), affirmed 402 Pa. 304 (1961).

In accordance with the foregoing opinion, we enter the following:

ORDER

And now, June 21, 1967, the appeal of The Second National Bank of Meyersdale from the adjudication of the Board of Finance and Revenue made on June 2,

1964, is denied and judgment entered in favor of the Commonwealth of Pennsylvania and against appellant in the amount of $2,713.20.[2]

[2] Interest has not been added as the tax was paid when due.