## Seaboard Industries v. Monaco

*Bernard J. Smolens,* for plaintiff.
*Theodore Voorhees,* for defendant.

ALEXANDER, J., September 24, 1971.—This case is now before the court upon preliminary objections of defendant, Albert B. Monaco, to a writ of attachment execution issued by plaintiff, Seaboard Industries, Inc., on January 7, 1971, naming the Estate of Maurice Rademan as garnishee. Defendant formerly served as plaintiff's secretary and lawyer.

In this equity action, along with the companion action of Seaboard Industries, Inc. v. Walter F. Joachim, December term, 1965, no. 646, plaintiff's former president, the defendant, and Walter F. Joachim were found to have violated their fiduciary duties of loyalty and faithfulness to plaintiff by having diverted a corporate opportunity to obtain unjust personal gains.

Pursuant to a final decree entered December 10, 1968, Monaco and Joachim were ordered to file accountings, return all sums wrongfully received by them to plaintiff and to pay a counsel fee of $25,000 to Hon. Arlin M. Adams, then plaintiff's counsel, and $7,800 in expenses.

As a result of the accountings filed and hearings thereon, a decree was entered September 9, 1969, on which judgment was entered against both Monaco and Joachim for the total sum of $207,125 payable to plaintiff. This does not include the counsel fees and costs enumerated.

On December 9, 1969, Monaco appealed to the Supreme Court of Pennsylvania from the decree of September 9, 1969, which court sustained the said decree in an opinion filed March 18, 1971.

Plaintiff contends that Monaco did not notify plaintiff's counsel that he had a lawyer's professional liability policy until after the decree of December 10, 1968, but that the carrier had declined to defend the suit on his behalf.

In July 1969, plaintiff issued an attachment execution against Monaco's liability insurance carrier for recovery of the $25,000 counsel fee and $7,800 in expenses awarded to plaintiff's counsel and for recovery of costs of approximately $6,000.

Plaintiff also issued an attachment execution against Monaco's insurance carriers for recovery of the judgment of $207,125.

Plaintiff issued additional attachment executions against Monaco and directed the same to The Girard Bank, The Fidelity Bank and North American Life Assurance Company.

On January 7, 1971, plaintiff issued an attachment execution against Monaco directed to the executor of the Estate of Maurice Rademan, deceased, for

which Monaco was serving as counsel. The asset sought to be attached is the fee to which Monaco may be entitled for legal services rendered to the estate.

Monaco objects to this attachment execution, contending that he is immune from attachment by reason of a letter agreement between him and plaintiff's counsel dated October 31, 1969, in which plaintiff agreed to first proceed against defendant's liability insurance carriers, Insurance Company of North America and Continental Casualty Company, to collect the debt.

It is not disputed that Monaco paid plaintiff $10,000 on account of the judgments against him. Monaco contends that this payment represented the consideration for the alleged agreement as set forth in his letter of October 31, 1969, to plaintiff's counsel. However, plaintiff argues that such payment was not consideration for the alleged agreement and that the letter of October 31, 1969, is not an enforceable agreement. In addition, plaintiff contends that the entire understanding of the parties is contained in two letters, one from Arlin M. Adams, Esq., then plaintiff's counsel, to Monaco dated October 24, 1969, and Monaco's letter to Judge Adams dated October 31, 1969.

Following the entry of the decree of September 9, 1969, Monaco, his attorney, plaintiff's present counsel, Ronald H. Isenberg, Esq., and Judge Adams conferred respecting executions against defendant and his payment of $10,000 on account of the judgments against him.

The letter of October 24, 1969, from Judge Adams to Monaco states that, in exchange for payment of $10,000 by Monaco to plaintiff, plaintiff would withdraw its attachments against The Girard Trust Bank,

The Fidelity Bank and North American Life Assurance Company of Canada only (which, in fact, had then already been done), would not press further executions against Monaco before May 1, 1970, and during the interim would pursue negotiations with defendant's two liability carriers for payment of the judgments.

Judge Adams' letter further provided that an appeal by Monaco would act to release plaintiff from those arrangements because it would then be difficult, it not impossible, for plaintiff's counsel to deal with defendant's liability insurance carriers.

As already noted, Monaco appealed to the Supreme Court of Pennsylvania on December 9, 1969.

Accordingly, plaintiff argues that if an enforceable agreement existed between the parties, plaintiff was released therefrom when Monaco appealed.

Plaintiff further contends that, even if Monaco's letter of October 31st is the entire agreement of the parties, it is not binding because the alleged consideration of $10,000 paid by Monaco on account of the judgments against him was merely a promise to perform that which he was already obligated to perform by virtue of the decree of September 9, 1969, and the judgments in excess of $245,000. In any event, plaintiff contends that the payment of $10,000, admittedly a mere token and almost imperceptible amount of the total sum Monaco was obligated to pay, was not consideration to create a legally enforceable agreement.

Finally, plaintiff submits that preliminary objections raising immunity from attachment under Pennsylvania Rule of Civil Procedure 3142 are available only to a garnishee and not to defendant.

Although rule 3142(a), providing for the defense of immunity, is silent as to the identity of the persons

who may raise the stipulated objections, there is no reason why a defendant may not raise the issue of immunity by preliminary objections and it is likewise appropriate that rule 3142(a) be construed to permit an execution defendant to file preliminary objections on his own behalf: Eastern Lithographing Corp. v. Silk, 203 Pa. Superior Ct. 21 (1964). Similarly, the right to file preliminary objections in a garnishment proceeding is not only available to the garnishee and defendant, but is extended also to other parties in interest who are entitled to intervene in the proceeding and who have done so: Fleming v. Quaid, 204 Pa. Superior Ct. 19 (1964). See also 4 Goodrich-Amran, Standard Pa. Prac., page 324.

Although a contract cannot be based on a promise to perform an obligation which a party is already bound to perform, if the obligation is subject to a reasonable dispute, then the promise may provide the consideration for an enforceable contract: Blaisdell Filtration Co., v. Bayard & Co., Inc., 311 Pa. 6 (1933).

On October 31, 1969, the date of the letter from Monaco to Judge Adams, Monaco had a right to appeal from the decree of September 9, 1969, and the judgments entered against him which, therefore, remained in dispute at that time, including the sum of $10,000 paid by Monaco.

Although, as plaintiff argues, the sum paid is very small in proportion to the total sum of the judgments, the court will not inquire into the adequacy of the consideration. Graham v. Jonnel Enterprises, Inc. et al., 435 Pa. 396 (1969); Thomas v. Thomas Flexible Coupling Co., 353 Pa. 591 (1946).

The court finds, therefore, that the letter of October 31, 1969, constituted an enforceable agreement. However, to ascertain the fair intentions of the parties

based upon this letter agreement raises further questions.

The fundamental rule in the construction of contracts is to ascertain the intention of the parties at the time of making the contract. Unit Vending Corp. v. Lacas, 410 Pa. 614 (1963); Wilkes-Barre Township School Dist. v. Corgan, 403 Pa. 383 (1961). In order to ascertain the fair intention of the parties, the court may consider the obvious purpose, the subject matter and surrounding circumstances and will not presume that the parties intended an impossible, absurd, unjust or unreasonable result: Stewart, Appellant v. Chernicky, 439 Pa. 43 (1970); United Refining Co. v. Jenkins, 410 Pa. 126 (1963); Berke v. Bregman, 406 Pa. 142 (1962); Mowry v. McWherter, 365 Pa. 232 (1950); Levin v. Fidelity-Philadelphia Trust Co., 358 Pa. 124 (1948); Block v. Mylish, 351 Pa. 611 (1945); Pocono Manor Assn. v. Allen, 337 Pa. 442 (1940); Smith-Faris Co. v. Jameson Memorial Hospital Assn., 313 Pa. 254 (1934); Central-Penn Nat. Bank v. Firestone Tire & Rubber Co., 154 Pa. Superior Ct. 70 (1944).

Although it is clear that preliminary negotiations are presumed to be merged into a written contract, such negotiations may be considered by the court when the subject matter of the negotiations may affect the meaning of the words employed and the fair intention of the parties: Dowgiel v. Reid, 359 Pa. 448 (1948); Myers' Estate, 238 Pa. 195 (1913).

Monaco's objections are based solely on the letter of October 31, 1969, which recites that plaintiff and counsel "will not press any further executions or attachments against me until (a) they have exhausted all negotiations and all efforts in any actions necessary with the two insurance companies in order to obtain payment to discharge judgments in the said case . . ."

Applying the applicable rules of construction to the instant facts, it becomes clear that the parties did not fairly intend that plaintiff must complete all garnishment proceedings against Monaco's two liability carriers before issuing any other attachment executions, unless it can also be concluded that Monaco agreed and intended not to appeal.

Otherwise, it must be concluded either that an appeal by Monaco could not appreciably affect the course of the intended negotiations between plaintiff and Monaco's insurance carriers and the garnishment proceedings against them or that plaintiff intended to accept such difficulties and the effects that an appeal might have on plaintiff's ability to deal with Monaco's carriers.

Either proposition causes an absurd and unjust result. Under the circumstances, it is patently unreasonable to conclude that this was plaintiff's fair intention. At the very least, an ambiguity is raised which requires the use of extrinsic aids such as the attendant conditions and circumstances, the nature of the subject matter, the motives or objects to be accomplished, the relation of the parties, the rights in regard to which they negotiated and the consideration paid: East Crossroads Center, Inc. v. Mellon-Stuart Co., 416 Pa. 229 (1965); Plasterer Estate, 413 Pa. 513 (1964); New Charter Coal Co. v. McKee, 411 Pa. 307 (1963); United Refining Co. v. Jenkins, 410 Pa. 126 (1963); Atlantic Refining Co. v. Wyoming Nat. Bank of Wilkes-Barre, 356 Pa. 226 (1947); City of Philadelphia v. Philadelphia Transp. Co., 345 Pa. 244 (1942).

As a construction aid, reference to Judge Adams' letter of October 24, 1969, to Monaco clarifies plaintiff's intention to withdraw the executions stipulated, withhold further executions until May 1, 1970, and, during the interim, to negotiate with Monaco's two

liability carriers in an effort to obtain payment of the judgments from them. Further clarification is provided by the condition that an appeal by Monaco "would act to release our client from the above arrangement."

The court will not evaluate the adequacy of the consideration to determine whether or not an enforceable contract was created, but the adequacy of payment by Monaco of $10,000 may be considered to ascertain the fair intention of the parties. Since the judgments against Monaco exceeded $245,000, the payment of $10,000 was very small when weighed against the obligation which Monaco argues that plaintiff agreed to relinquish in exchange therefor.

For these reasons, the court is compelled to conclude that the only reasonable intention of the parties is that plaintiff agreed to withdraw the executions stipulated in Judge Adams' letter of October 24, 1969, which had already been done, to withhold any further executions until May 1, 1970, and meanwhile to negotiate with Monaco's liability carriers, subject, however, to the condition that Monaco would not appeal. The court further concludes that in the light of all the circumstances, including the letters of October 24, and 31, 1971, it would be unreasonable, absurd and unjust to conclude that plaintiff intended to give up its right to obtain payment of the judgments from all other sources except through the questionable source of Monaco's liability carriers regardless of defendant's action on appeal.

In this context, Monaco's appeal negated plaintiff's agreement to forbear in its attachment executions.

In accordance with the foregoing, defendant's preliminary objections to the attachment execution are denied.